**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

ABEL CARVAJAL,
Plaintiff,
v. Case No.: 1:26-cv-21889-CMA

JEANETTE M. NUÑEZ, in her individual and official capacity as President of FLORIDA INTERNATIONAL UNIVERSITY;
Defendant.
_______________________________________/

**AMENDED PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Abel Carvajal respectfully moves on an emergency basis for a preliminary injunction enjoining Defendant from enforcing FIU's Student Conduct and Honor Code against him for his protected off-campus, private speech, and from investigating, charging, adjudicating, or sanctioning him for that private expression. In support, Plaintiff states:

## INTRODUCTION

FIU seeks to punish Plaintiff for his First Amendment protected speech with an ongoing disciplinary case predicated on off-campus, private speech in a non-university forum. FIU has charged Plaintiff under FIU-2501 § 1.5.ii ("Assisting") based on allegations that during Fall 2025 he created and managed a private off-campus group chat where others posted statements the University falsely characterizes as "threatening." The speech at issue occurred in a private group chat, not in any University forum or at a University-sponsored event .

Plaintiff requests an order enjoining Defendant and those acting in concert with her from: (a) enforcing or pursuing any investigation, charge, adjudication, or sanction against Plaintiff arising from his off-campus, private speech at issue, including under FIU-2501 § 1.5.ii ("Assisting") as

applied here; and (b) otherwise enforcing FIU-2501 § 1.5.ii to penalize Plaintiff's protected expression pending final judgment.

**FACTS**

FIU publicly announced on March 10, 2026, that it had reviewed over 1,200 pages of evidence regarding a private group chat and had initiated charges based on alleged violations of the non-discrimination regulation and Student Code of Conduct, including potential charges of harassment, engaging in "threats," and interfering with the rights of others, carrying possible suspension or expulsion. In the same statement, the President and the Board declared that they "will not accept, tolerate, or condone any form of racism and antisemitism at FIU."

The controversial speech in the group chat includes remarks such as:

"Ew you had colored professors?!"

"I reguse [sic] to be indoctrinated by the coloreds."

"Avoid the coloreds like the plague."

"You can fuck all the [k-word] you want. Just don't marry them and procreate."

"I would def not marry a Jew."

"Why didn't miggress leave?"

On March 11, 2026, FIU issued a charge letter to Plaintiff alleging that during Fall 2025 he created and managed a group chat where individuals posted statements threatening to harm others and charging him with FIU-2501 § 1.5.ii ("Assisting"). FIU told Plaintiff that he must choose one of three tribunal options for a final hearing on the matter.

FIU's Student Conduct and Honor Code states that nothing in the regulation should be interpreted to abridge rights under the United States or Florida Constitutions, including freedom of expression protected by the First Amendment .

The University's charges against Plaintiff arise from off-campus, private, speech in a group chat. Plaintiff faces ongoing disciplinary

proceedings and potential sanctions up to suspension or expulsion, along with reputational and academic harms, and his speech has been chilled. The chat contained controversial remarks, including racial, gender-based, antisemitic, and anti-LGBTQ language, but no illegal speech or categories of unprotected speech such as true threats, incitement, or fighting words .

**LEGAL MEMORANDUM**

A party seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury absent an injunction; (3) that the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

Where First Amendment rights are likely being violated, the irreparable-harm showing is especially strong. The Supreme Court has made clear that “[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.” *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Eleventh Circuit likewise recognizes that self-censorship and chilled speech constitute cognizable First Amendment harm. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022).

**I. Plaintiff is likely to succeed on the merits.**

The First Amendment forbids public universities from punishing students for protected speech, including offensive or controversial viewpoints, particularly when expressed off campus and outside any school-sponsored forum. FIU’s action targets the content and viewpoint of Plaintiff’s off-campus, private speech and his alleged role as a chat creator/monitor, using FIU-2501 § 1.5.ii (“Assisting”) as the vehicle for discipline . The University’s own Code disclaims any interpretation abridging First Amendment rights .

The University's public statements confirm that its disciplinary initiative is tied to the viewpoints expressed in the private chat, underscored by the President's declaration that FIU will not accept, tolerate, or condone certain forms of speech labeled as racism and antisemitism . This is impermissible viewpoint discrimination.

The chat included controversial speech but no unprotected categories such as true threats, incitement, or fighting words. The allegations, on their face, target expression and attribute others' speech to Plaintiff through an "assisting" theory based on his role in creating or managing the chat . Punishing Plaintiff for private, off-campus expression and for the speech of others in a private forum violates the First Amendment.

Plaintiff's monitoring and participation in the private chat is protected activity, and FIU may not punish him for receiving information and ideas. His participation did not cause a substantial disruption at FIU .

As applied here, FIU-2501 § 1.5.ii is overbroad and vague, vesting officials with standardless discretion to penalize protected expression based on perceived offensiveness. Plaintiff is therefore likely to prevail on his First Amendment claim.

The First Amendment prohibits government officials from burdening speech because of hostility to the speaker's viewpoint. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995), describes viewpoint discrimination as an "egregious form of content discrimination." Public universities are not exempt from this rule. To the contrary, "the college classroom with its surrounding environs is peculiarly the 'marketplace of ideas,'" and First Amendment protections apply with special force there. *Healy v. James*, 408 U.S. 169, 180 (1972).

The Supreme Court has also made clear that "the mere dissemination of ideas — no matter how offensive to good taste — on a state university campus may not be shut off in the name alone of

'conventions of decency.'" *Papish v. Bd. of Curators of Univ. of Mo*., 410 U.S. 667, 670 (1973). Thus, even offensive or unpopular political expression remains protected absent a lawful, viewpoint-neutral basis for discipline. The verified allegations establish that FIU is basing it's discipline investigation on plaintiff's monitoring of the group chat.

FIU did not identify any narrowly tailored, content-neutral rule violation and instead acted in response to controversy over protected expression. At this stage, those allegations establish a substantial likelihood that the disciplinary proceeding constitutes impermissible viewpoint discrimination.

**a. The speech at issue is protected, and off-campus expression receives especially strong protection.**

School officials may not suppress student expression unless it would materially and substantially disrupt school operations or invade the rights of others. *Tinker v. Des Moines Indep. Cmty. Sch. Dist*., 393 U.S. 503, 513 (1969). That rule applies with particular force where the government seeks to punish political expression.

And where speech occurs off campus, the University's authority is even more limited. In *Mahanoy Area School District v. B. L. ex rel. Levy*, 594 U.S. 180 (2021), the Supreme Court held that schools have a diminished interest in regulating off-campus student speech and reaffirmed that even crude or offensive off-campus expression is ordinarily protected absent threats, harassment, or substantial disruption.

Here, the verified allegations are that the relevant expression occurred off campus, involved political viewpoints and current events, and did not constitute a true threat, incitement, or other unprotected category of speech. Nor has FIU identified facts showing a material and substantial disruption under Tinker. On these allegations, the speech falls squarely within the First Amendment's protection.

**II. Absent injunctive relief, Plaintiff will suffer irreparable harm.**

Defendant's actions have caused and will continue to cause irreparable harm by chilling Plaintiff's speech and subjecting him to risk of severe sanctions and reputational injury. The imminent disciplinary process exacerbates this harm. The University threatens to hold a final hearing if he does not comply. Ongoing deprivation of First Amendment freedoms constitutes irreparable injury.

The irreparable-harm requirement is plainly met. The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Eleventh Circuit applies the same principle in the preliminary-injunction context. *Vital Pharms., Inc. v. Alfieri*, 23 F.4th 1282, 1291 (11th Cir. 2022).

Here, Abel is suffering ongoing deprivation of its ability to speak. No damages remedy after final judgment can restore those lost opportunities for speech, organizing, recruitment, and political engagement during the current period during which his speech being chilled.

**III. The balance of equities favors an injunction.**

The requested relief preserves the status quo and prevents constitutional injury. The balance of harms overwhelmingly favors Plaintiff. FIU's Code itself commits the University to respect First Amendment rights. Enjoining enforcement against off-campus, private speech imposes minimal burden on the University while preventing significant harm to Plaintiff. Without an injunction, Abel continues to lose constitutional rights that cannot be restored later.

By contrast, requiring FIU to restore the status quo ante pending final judgment imposes minimal cognizable harm on Defendant. If Defendant ultimately prevails, the University remains free to administer lawful, viewpoint-neutral policies. But until then, the harm from denying a student access to speech and channels is far greater than any temporary administrative burden associated with reinstatement. Where constitutional rights are at stake, the balance of equities ordinarily tips strongly toward preserving those rights.

**IV. The public interest supports injunctive relief.**

Protecting constitutional rights is always in the public interest, particularly at public institutions of higher education. FIU has publicly tied its enforcement posture to broad condemnation of the chat's viewpoints . An injunction ensures that disciplinary systems are not used to punish protected expression and maintains robust debate consistent with the University's own policies.

It is always in the public interest to prevent the violation of constitutional rights. The public has a profound interest in ensuring that public universities do not suppress speech or punish association because of disfavored viewpoints. The university campus is a traditional environment for robust debate and political advocacy, and the "marketplace of ideas" principle applies with special force there. *Healy*, 408 U.S. at 180.

Courts have likewise recognized that the public interest "could not possibly be served by the enforcement of an unconstitutional ordinance." *Scott v. City of Daytona Beach*, 689 F. Supp. 3d 1160, 1185 (M.D. Fla. 2023). The requested injunction would preserve, not distort, that marketplace by preventing the government from excluding one student based on viewpoint while this case proceeds.

**V. Security should be waived or set at a nominal amount.**

Rule 65(c) allows the Court discretion in setting security. Because Plaintiff seeks to vindicate important constitutional rights and the requested injunction merely allows him to continue school while the case proceeds, the Court should require no bond or, alternatively, a nominal bond. Defendant is a public official and there is little to no risk of monetary harm from temporary reprieve pending adjudication.

**Scope of Requested Injunction**

Plaintiff seeks an order that, pending final judgment, Defendant, her officers, agents, servants, employees, attorneys, and all persons in active concert or participation with her are enjoined from:

**(a)** investigating, charging, adjudicating, or sanctioning Plaintiff for the off-campus, private speech at issue in the referenced group chat, including under FIU-2501 § 1.5.ii ("Assisting") as applied here; and

**(b)** otherwise enforcing FIU-2501 § 1.5.ii to penalize Plaintiff's protected expression arising from that off-campus, private speech.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this emergency motion and enter a preliminary injunction as set forth above, and grant such other and further relief as the Court deems just and proper.

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated within it are true.

*/s/ Abel Carvajal*

**Dated**: March 25, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI

Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
Mount Dora, Florida 32757
Telephone: (352) 455-2928

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on 3.25.2026, I caused a true and correct copy of the foregoing to be filed via CM/ECF, which will serve all counsel of record. I further certify that Defendant was served, and that a copy of the injunction was emailed to Defendant two (2) days prior.

*/s/ Anthony F. Sabatini*