## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

CASE NO. 26-21889-CIV-ALTONAGA/Reid
CASE NO. 26-22053-CIV-ALTONAGA/Lett
CASE NO. 26-22154-CIV-ALTONAGA/Lett
CASE NO. 26-22161-CIV-ALTONAGA/D'Angelo

ABEL CARVAJAL,
      Plaintiff,

v.

JEANETTE M. NUÑEZ,
      Defendant.

_____/

DARIEL GONZALEZ,
      Plaintiff,

v.

JEANETTE M. NUÑEZ,
      Defendant.

_____/

ETHAN RATCHKAUSKAS,
      Plaintiff,

v.

JEANETTE M. NUÑEZ,
      Defendant.

_____/

DANTE MOJENA,
      Plaintiff,

v.

JEANETTE M. NUÑEZ,
      Defendant.

_____/

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

Plaintiffs, by and through undersigned counsel, respectfully respond in opposition to Defendant's Motion to Dismiss (ECF No. 34), and state:

### **INTRODUCTION**

Defendant asks this Court to dismiss a live First Amendment controversy as "premature," even though Plaintiffs are already subject to ongoing disciplinary proceedings that target their speech and expose them to severe sanctions, including suspension or expulsion. Notably, two of the four Plaintiffs—Abel Carvajal and Dariel Gonzalez—have final disciplinary tribunal hearings scheduled for the week of April 28, 2026, underscoring the immediacy and concreteness of the injury at issue. As a direct result of these proceedings, Plaintiffs are currently engaging in self-censorship, curtailing their speech and daily communications out of fear of further punishment. That position is contrary to settled First Amendment law.

As this Court has already recognized, the threshold questions in this case concern standing, ripeness, and the viability of Plaintiffs' First Amendment claims. Those questions turn on whether Plaintiffs face a present, concrete injury arising from Defendant's conduct. They do.

Plaintiffs are not challenging hypothetical future enforcement. They are already being investigated, charged, and subjected to disciplinary processes based on their speech. The Constitution does not require them to

endure the completion of an allegedly unconstitutional process before seeking judicial relief.

Accepting Plaintiffs' allegations as true—as the Court must at this stage—Defendant's Motion fails on every ground.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS ARE RIPE BECAUSE THEY FACE ONGOING AND IMMINENT ENFORCEMENT

Defendant's ripeness argument fails because it ignores the central principle governing First Amendment claims: where the government is actively enforcing or threatening to enforce restrictions on speech, the controversy is ripe.

As a direct result of FIU's actions and its false characterization of Plaintiffs' speech as threatening, all four Plaintiffs are presently engaging in self-censorship, refraining from speaking, joking, or participating in group communications out of fear that any further expression will be misinterpreted and subject them to additional discipline or sanction

The Eleventh Circuit has made clear that plaintiffs need not wait for final enforcement before seeking relief where they face a credible threat of enforcement or ongoing enforcement that chills speech. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119–20 (11th Cir. 2022). That is precisely the situation here.

3

Plaintiffs are already subject to formal disciplinary proceedings initiated by FIU based on their alleged speech. These proceedings are not speculative or contingent; they are ongoing and carry the threat of serious sanctions. Plaintiffs must either defend themselves in a process that targets their expression or self-censor to avoid further consequences. That is a present constitutional injury.

The Supreme Court has repeatedly held that such circumstances satisfy Article III. In *Susan B. Anthony List v. Driehaus*, the Court explained that, "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." 573 U.S. 149, 158–59 (2014). Instead, pre-enforcement review is appropriate where the threatened enforcement is sufficiently imminent. *Id.* at 159. The same is true here.

Defendant's reliance on administrative finality cases is misplaced. Those cases involve situations where no enforcement action had occurred. Here, enforcement is already underway. Requiring Plaintiffs to await final discipline would invert the purpose of the First Amendment, which protects against unconstitutional enforcement itself—not merely its final outcome.

## II. PLAINTIFFS HAVE ADEQUATELY ALLEGED ARTICLE III STANDING

4

Defendant's assertion that Plaintiffs lack injury in fact disregards binding precedent and the realities alleged in the Amended Complaint.

The Eleventh Circuit has squarely held that a chilling effect on speech constitutes a concrete injury where plaintiffs face a credible threat of enforcement. *Speech First*, 32 F.4th at 1119–20. The Supreme Court likewise recognizes that individuals need not subject themselves to punishment before challenging unconstitutional restrictions. *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 392–93 (1988).

Here, Plaintiffs face far more than a "subjective chill." All four Plaintiffs are presently engaging in self-censorship as a direct result of Defendant's disciplinary proceedings. They no longer participate in group text conversations as they previously did, do not joke with one another, and have significantly curtailed even ordinary conversations because they fear that anything they say may be scrutinized, misinterpreted, or used against them in ongoing proceedings that could result in suspension, expulsion, or even potential criminal consequences, including fear of arrest. This pervasive self-censorship reflects a present and concrete burden on Plaintiffs' speech, not a subjective or hypothetical concern. See *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

This is precisely the type of self-censorship that the Eleventh Circuit has recognized as sufficient to establish standing where a credible threat of

enforcement exists. *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119–20 (11th Cir. 2022).

The burden imposed by Defendant's actions extends beyond self-censorship and into Plaintiffs' daily lives. Plaintiffs have increasingly isolated themselves and limited communication with one another because they are now subject to an ongoing disciplinary process that demands substantial time, attention, and preparation. They are required to devote countless hours to defending themselves in proceedings that threaten their academic futures. In addition, Plaintiffs have already incurred significant financial costs, including thousands of dollars in legal fees, in order to prepare for and respond to these proceedings. These concrete burdens further demonstrate that Plaintiffs are suffering a present and ongoing injury sufficient to establish standing.

Defendant's reliance on cases involving abstract or speculative chill—such as *Laird v. Tatum*, 408 U.S. 1 (1972)—is misplaced. Unlike *Laird*, this case involves direct government action targeting Plaintiffs' speech. That distinction is dispositive.

## III. PLAINTIFFS PLAUSIBLY ALLEGE A FIRST AMENDMENT VIOLATION

6

Defendant's merits arguments fail because they attempt to resolve disputed factual issues and recast Plaintiffs' allegations in Defendant's favor—both of which are improper on a motion to dismiss.

## A. Plaintiffs' Off-Campus Speech Is Entitled to Heightened Protection

The Supreme Court has made clear that schools' authority to regulate off-campus speech is significantly diminished and that students retain robust First Amendment protections in that context. *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 189–90 (2021).

Plaintiffs allege their speech occurred in a private, off-campus group chat. Accepting that allegation as true, this case falls squarely within the core protections recognized in *Mahanoy*.

## B. Defendant's Attempt to Characterize the Speech as Unprotected Is Premature and Improper

Defendant's argument rests on the assertion that Plaintiffs' speech constitutes threats or otherwise falls outside First Amendment protection. That argument cannot be resolved at the pleading stage.

Whether speech constitutes a "true threat" is a highly fact-dependent inquiry requiring consideration of context, intent, and audience. *Virginia v. Black*, 538 U.S. 343, 359 (2003). Plaintiffs expressly allege that their speech does not fall within any unprotected category. At this stage, that allegation must be accepted as true.

7

Moreover, the First Amendment does not permit the government to punish speech based merely on its offensiveness or disturbing nature. See *Papish v. Bd. of Curators*, 410 U.S. 667, 670 (1973). Nor does it allow institutions to suppress speech based on speculative fears of disruption. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508–09 (1969).

Defendant's reliance on *Tinker* is therefore misplaced. *Tinker* permits regulation only where speech causes a material and substantial disruption or invades the rights of others. No such findings have been made here, and none can be inferred at the pleading stage.

Defendant's position would effectively authorize universities to discipline students for disfavored speech based on unproven allegations—a result fundamentally incompatible with the First Amendment.

## IV. QUALIFIED IMMUNITY DOES NOT WARRANT DISMISSAL

Defendant's qualified immunity argument likewise fails.

Plaintiffs also allege that Defendant Nuñez personally engaged in conduct targeting Plaintiffs' speech. Specifically, Defendant issued and signed a public statement addressing the group chat at issue and disseminated that statement publicly, including through social media. That statement singled out the speech underlying the disciplinary proceedings and reflected an intent to condemn and punish the viewpoints expressed.

Such conduct, taken as true at the pleading stage, supports Plaintiffs' claim that Defendant was personally involved in and directed actions targeting protected expression.

First, Plaintiffs have plausibly alleged a violation of their First Amendment rights. That alone precludes dismissal on qualified immunity grounds at this stage. See *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Second, the relevant law is clearly established. The Supreme Court has long held that students at public institutions retain First Amendment protections and that government actors may not punish protected expression. See: *Healy v. James*, 408 U.S. 169, 180 (1972); *Papish*, 410 U.S. at 670; *Mahanoy*, 594 U.S. at 189–90.

In addition, the Eleventh Circuit's decision in *Speech First* makes clear that university policies and enforcement actions that chill student speech are subject to constitutional scrutiny.

These authorities provided fair warning that subjecting students to disciplinary proceedings based on protected, off-campus speech raises serious constitutional concerns.

At a minimum, whether Defendant's conduct violated clearly established law is a fact-intensive inquiry that cannot be resolved on a motion to dismiss.

9

## CONCLUSION

Defendant's Motion rests on an attempt to reframe an ongoing constitutional injury as a speculative future harm and to resolve factual disputes in its favor. Binding precedent forecloses both arguments.

Because Plaintiffs have adequately alleged ripeness, standing, and a plausible First Amendment violation, Defendant's Motion to Dismiss should be **DENIED**.

Date: April 20, 2026

Respectfully submitted,

*/s/ Anthony F. Sabatini*
ANTHONY F. SABATINI
Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Ave.
Mount Dora, Florida 32757
Telephone: (352) 455-2928
**Lead Counsel for Plaintiffs**

*/s/ Gavin B. Rollins*
GAVIN B. ROLLINS, ESQ.
FL BAR No. 1064417
gavin@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st AVENUE
MOUNT DORA, FL 32757
T: (352)-328-4892
**Co-Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I certify that on 4.20.2026, I caused a true and correct copy of the foregoing to be filed via CM/ECF, which will serve all counsel of record.

*/s/ Anthony F. Sabatini*