UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21889-CIV-ALTONAGA/Reid

ABEL CARVAJAL, *et al.*,

      Plaintiffs,

v.

JEANETTE M. NUÑEZ,

      Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant, Jeanette M. Nuñez's Motion to Dismiss [ECF No. 34], filed on April 6, 2026.  Plaintiffs — Abel Carvajal, Dariel Gonzalez, Ethan Ratchkauskas, and Dante Mojena — filed a Response [ECF No. 38]; to which Defendant filed a Reply [ECF No. 44].  Plaintiffs also filed a Sur-Reply [ECF No. 46].  For the following reasons, the Motion is granted in part.

## I.  BACKGROUND

This civil rights action arises from allegations that Defendant, in her individual capacity and her official capacity as President of Florida International University ("FIU"), violated Plaintiffs' First Amendment rights by initiating student conduct charges against them based on speech in a private, off-campus group chat.  (*See* Am. Compl. [ECF No. 29] ¶¶ 1, 18–19, 23–24, 35).

During the fall 2025 semester, FIU received reports concerning a private group chat in which Plaintiffs and others posted controversial and offensive speech.  (*See id.* ¶ 18).  On March 10, 2026, Defendant issued a public statement, announcing, "[t]he Office of Civil Rights and the Office of Student Conduct and Academic Integrity have reviewed more than 1,200 pages of

evidence and initiated charges based on violations of the university's non-discrimination regulation and the Student Code of Conduct." (Compl. [ECF No. 1] 12 (alteration added); *see also* Am. Compl. ¶ 21).[12] Defendant's statement continued, "The administration and our Board of Trustees will not accept, tolerate, or condone any form of racism or antisemitism at FIU." (Compl. 13; *see also* Am. Compl. ¶ 22).

On March 5, 2026, Ratchkauskas received a charge letter accusing him of violating FIU's Student Code of Conduct based on his participation in the group chat. (*See* Am. Compl. ¶ 32; *see also id.* 20–22, ¶ 31).[3] The letter cited several of Ratchkauskas's statements, including, "let's go blow up dolphin mall with an explosive device or something," and "she just has to Swiss cheese the professor at that point[,]" which he clarified meant "[p]utting holes in them via means of firearm[.]" (*Id.* 20 (alterations added; quotation marks omitted)).

That same day, Gonzalez received a letter from the Office of Civil Rights ("OCR") stating it had received a report alleging conduct implicating FIU's nondiscrimination, harassment, and retaliation regulation. (*See id.* 18–19). On March 23, 2026, Gonzalez received an updated charge letter stating that FIU had received a report concerning his participation in a group chat in which he allegedly threatened to harm others, among other alleged violations. (*See* Mot., Ex. 1, Gonzalez Charge Letters [ECF No. 34-1] 2–4). According to Plaintiffs, statements Gonzalez made in the

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

[2] Plaintiffs cite to Defendant's March 10, 2026 statement as Exhibit E, but the statement is not found there. (*See generally* Am. Compl.). All the same, Carvajal included the March 10, 2026 statement in his Complaint (*see* Compl. 12–14), and the Court "has authority to take judicial notice of its own records without converting a motion to dismiss into a motion for summary judgment." *Cui v. United States*, No. 22-00456, 2024 WL 4678471, at *5 (S.D. Ala. Mar. 26, 2024) (quotation marks and citation omitted).

[3] Plaintiffs did not attach their exhibits as separate attachments to the Amended Complaint. (*See generally* Am. Compl.). Consequently, the Court cites both to paragraphs and pages within the Amended Complaint when appropriate.

group chat include:

- Ew you had colored professors?!

- I reguse [sic] to be indoctrinated by the coloreds.

- Avoid the coloreds like the plague.

- You can fuck all the [k-word] you want.  Just don't marry them and procreate.

- I would def not marry a Jew.

- Why didn't miggress leave?

(Am. Compl. ¶ 30 (alterations in original; quotation marks omitted)).  Two days later, the OCR sent Gonzalez a supplemental letter explaining the Complainant alleged Gonzalez made repeated inappropriate comments toward her, such as calling her "Negress", "Colored", and a "whore," while engaging in inflammatory communications that contributed to her harassment.  (Gonzalez Charge Letters 6–7).

On March 10, 2026, Mojena received a letter from the OCR stating it had received information indicating that he may have participated in or been a witness to behavior that may implicate FIU's nondiscrimination, harassment, and retaliation regulation.  (*See* Am. Compl. 28). The next day, Mojena received a letter charging him with violating FIU's Student Code of Conduct. (*See id.* ¶ 33; *see also id.* 24–26).  Also on March 11, 2026, Carvajal received a letter charging him with violating the Code of Conduct by creating and managing a group chat where individuals posted statements threatening to harm others.  (*See id.* ¶ 26; *see also id.* 14).

Plaintiffs' charge letters directed them to attend an information session where they would "have the opportunity to share [their] perspective and provide additional information . . . regarding these allegation(s); be provided information about the summary resolution and hearing processes; and [] be given access to information supporting the charge(s) available at the time."  (*Id.* 14, 21,

25 (alterations added); *see also* Gonzalez Charge Letters 2–4).  The charge letters also informed Plaintiffs that they could appeal the decision via the process established by FIU.  (*See* Am. Compl. 14, 21, 25; *see also* Gonzalez Charge Letters 4).[4]

Carvajal's and Gonzalez's hearings occurred on April 28, 2026, and April 30, 2026, respectively.  (*See* Reply 7).  Mojena and Ratchkauskas's hearings are scheduled for May 20, 2026, and May 15, 2026, respectively.  (*See* Def.'s Not. of Scheduling Student Conduct Hearings [ECF No. 47] 1).  On May 11, 2026, FIU issued disciplinary decisions against Carvajal and Gonzalez and immediately suspended them through May 2028.  (*See* Am. Emergency Mot. for Preliminary Injunction ("PI Mot.") [ECF No. 50] 10–13, 17–19).[5]

In their Amended Complaint, Plaintiffs assert two First Amendment claims under 42 U.S.C. section 1983 against Defendant — Count I against Defendant in her official capacity and Count II against Defendant in her individual capacity.  (*See* Am Compl. ¶¶ 37–45, 46–55).  Defendant moves to dismiss both claims, contesting the Court's subject matter jurisdiction and the sufficiency of the pleading with arguments related to ripeness, Article III standing, the *Younger* abstention doctrine, and failure to state claims upon which relief may be granted.  (*See generally* Mot.; Reply).  As the Court agrees that the *Younger* abstention doctrine applies, it does not reach the sufficiency of Plaintiffs' First Amendment claim.

## II.  LEGAL STANDARDS

***Rule 12(b)(1).***  "Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  It is presumed that a federal court lacks jurisdiction

---

[4] Gonzalez received a similar charge letter, but Plaintiffs did not attach it to their Amended Complaint.  (*See* Gonzalez Charge Letters 2–4).

[5] Gonzalez's suspension was based on multiple violations, several of which are distinct from his participation in the group chat.  (*See* PI Mot. 10–13).

in a case until the party asserting a claim demonstrates the court has jurisdiction over the subject matter. *See id.* (citations omitted). "If the court determines at any time that it lacks subject[ ]matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3) (alteration added).

**Ripeness.** A challenge to the ripeness of a claim is a form of factual attack on subject matter jurisdiction. *See Emery v. Allied Pilots Ass'n*, No. 16-80243-Civ, 2017 WL 1047029, at *1 (S.D. Fla. Mar. 20, 2017). "Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies of sufficient concreteness to evidence a ripeness for review." *Dig. Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997) (citations omitted).

**Standing.** To satisfy Article III's "'case' or 'controversy' requirement, a plaintiff in a matter must have standing to sue." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). Thus, standing to bring suit is a necessary component of subject matter jurisdiction. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992) (citations omitted). It involves three elements — to sue in federal court, a party asserting a claim "must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan*, 504 U.S. at 560–61). If a plaintiff lacks standing, the court does not have subject-matter jurisdiction over the case. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

### III.  DISCUSSION

"The *Younger* abstention doctrine is triggered when the federal district court has subject matter jurisdiction over the matter at issue but declines to exercise that jurisdiction." *Albrecht v.*

*Davis*, No. 21-cv-48, 2021 WL 11645441, at *5 (M.D. Fla. May 26, 2021), *report and recommendation adopted by* 2021 WL 11645440 (M.D. Fla. Jun. 16, 2021); *cf. Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) (noting that courts may resolve the threshold question of the applicability of the *Younger* doctrine "before addressing jurisdiction" (citations omitted)).  The Court addresses Defendant's ripeness and standing challenges before turning to Defendant's abstention argument.

**A. Ripeness**

Defendant first argues that the Court lacks jurisdiction because Plaintiffs' "ongoing student conduct cases at FIU are closer to their beginning than their end" and thus are not ripe for adjudication.  (Mot. 10).  Plaintiffs insist they have suffered justiciable injuries because they "are presently engaging in self-censorship, refraining from speaking, joking, or participating in group communications out of fear that any further expression will be misinterpreted and subject them to additional discipline or sanction."  (Resp. 3).

"The [ripeness] doctrine seeks to avoid entangling courts in the hazards of premature adjudication.  The ripeness inquiry requires a determination of (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 509 F. App'x 919, 922 (11th Cir. 2013) (alteration added; quoting *Digital Props.,* 121 F.3d at 589).  A claim that rests upon "contingent future events that may not occur as anticipated" or occur at all is not ripe.  *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010) (quotation marks and citation omitted).

1. Fitness of the Issues for Judicial Decision.

Since Defendant filed her Motion, several developments have undermined Defendant's ripeness argument.  On May 11, 2026, FIU issued disciplinary decisions immediately suspending Carvajal and Gonzalez through May 2028.  (*See* PI Mot. 10–13, 17–19).  Their suspensions remain

"effective immediately from the date of the decision," unless a discretionary stay is granted.  (*Id.* 14).  Certainly, Carvajal's and Gonzalez's claims no longer rest upon "contingent future events" and are ripe for the Court's consideration.  *Rivera*, 613 F.3d at 1050.

By contrast, Mojena's and Ratchkauskas's student conduct hearings have not yet occurred and are scheduled for May 20, 2026, and May 15, 2026, respectively.  (*See* Def.'s Not. of Scheduling Student Conduct Hearings).  Because Mojena and Ratchkauskas's claims rest upon contingent future events — Defendant argues no tangible controversy exists, and the Court lacks authority to act.  (*See* Mot. 11 (citing *Digital Props.*, 121 F.3d at 590)).  According to Plaintiffs, their First Amendment claims are ripe because "as a direct result of FIU's actions . . . Plaintiffs are presently engaging in self-censorship . . . out of fear that any further expression will be misinterpreted and subject them to additional discipline or sanction."  (Resp. 3 (alterations added)).  Plaintiffs also allege that FIU has placed holds on all of Plaintiffs' academic records, preventing them from graduating.  (*See* Am. Compl. ¶ 24).  Plaintiffs have a stronger position on the ripeness of Mojena's and Ratchkauskas's claims.

Defendant's reliance on two cited cases is misplaced.  (*See* Mot. 10–13).  In *Digital Properties*, the plaintiff argued that the city's zoning scheme violated its First Amendment rights after a city official advised the plaintiff to meet with her supervisor to obtain a zoning decision.  *See Digital Props.*, 121 F.3d at 588–89.  The Eleventh Circuit held the claim was not ripe because the city had not issued a final administrative decision on the plaintiff's request.  *See id.* at 590.  The court further concluded that the official's suggestion to meet with her supervisor did not chill the plaintiff's exercise of its First Amendment rights.  *See id.* at 590–91.

In *The Jacqueline Norris Huggett v. Ironshore Specialty Insurance Company*, the plaintiff brought a breach of contract claim against her insurance company, arguing she suffered a

justiciable injury from the defendant's failure to pay the actual cash value of her loss.  No. 18-21467, 2018 WL 8359643, at *2 (S.D. Fla. July 18, 2018).  The court held the claim was not ripe because the defendant had not denied the claim, continued to investigate it, and the plaintiff continued to submit revised estimates.  *See id.* at *3.

Here, although Mojena's and Ratchkauskas's student conduct hearings have not yet occurred, these Plaintiffs allege FIU has placed academic holds on their transcripts, preventing them from graduating.  (*See* Am. Compl. ¶ 24).  Because this sanction is currently in place, Mojena and Ratchkauskas present a justiciable controversy — even if administrative proceedings against them are ongoing.  *See Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*, No. 22-21213, 2022 WL 22835378, at *7 (S.D. Fla. Oct. 7, 2022) ("[T]he mere fact that administrative proceedings are ongoing does not prevent Plaintiffs' federal action from being ripe for adjudication in this case." (alteration added; other alterations adopted; quotation marks and citation omitted)).

2.  Hardship to the Parties from Withholding Court Consideration.

The Court next evaluates "the hardship to the parties of withholding court consideration." *Digital Props.*, 121 F.3d at 589.  Plaintiffs allege the disciplinary process has chilled their speech. (*See* Am. Compl. ¶ 24; *see* Resp. 3 (contending Plaintiffs are presently engaging in self-censorship out of fear that any further expression will be misinterpreted and subject them to additional discipline or sanction)).  Accepting the allegations as true, the Court finds the allegations that Defendant's conduct chills Plaintiff's protected First Amendment activity satisfy the second factor, because they raise "the specter of 'irretrievable loss." *Congregation 3401*, 2022 WL 22835378, at *6 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90–91 (2d

Cir. 2002) (citations and quotation marks omitted)). As a result, the Court declines to dismiss the Amended Complaint on this basis.

### B. Standing

Next, Defendant argues that Plaintiffs lack standing because they have not suffered an injury in fact. (*See* Mot. 13–14). Defendant insists Plaintiffs' allegation that FIU's ongoing disciplinary proceedings chill Plaintiffs' speech is conclusory and devoid of any facts to support it. (*See id.* 13 (quoting Am. Compl. ¶ 7)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). Notably, "at the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim." *Bennett v. Spear*, 520 U.S. 154, 168 (1997) (alteration adopted; other alterations added; citation and quotation marks omitted).

The Court easily finds that Plaintiffs have asserted a sufficient injury in fact. Carvajal and Gonzalez are suspended through May 2028, and their suspension persists regardless of their right to appeal FIU's decision. (*See* PI Mot. 10–13, 14, 17–19). Mojena and Ratchkauskas allege that FIU has placed holds on their academic records, preventing them from graduating. (*See* Am. Compl. ¶ 24).

Plaintiffs also allege that Defendant's conduct has chilled their speech. (*See id.* ¶¶ 7, 23–24). The Eleventh Circuit has recognized that chilling speech and the resulting self-censorship may constitute an injury for standing purposes when: (1) the plaintiff "was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution." *ACLU v.*

*The Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) (citations omitted). Mojena and Ratchkauskas's disciplinary hearings are scheduled, and FIU's adverse determinations against Carvajal and Gonzalez based on participation in the same group chat renders Mojena and Ratchkauskas's prosecution likely. Taken as true, Plaintiffs' allegations satisfy the injury in fact requirement of standing.

### C. *Younger* Abstention

Defendant also asks the Court to stay this action under the *Younger* abstention doctrine because the relief Plaintiffs seek would interfere with the ongoing student disciplinary proceedings. (*See* Reply. 7–9). Plaintiffs insist that the underlying proceedings do not fall within any *Younger* category and that abstention is therefore unwarranted. (*See* Sur-Reply 2–4). In this instance, Defendant has the stronger argument.

The *Younger* abstention doctrine instructs district courts to abstain from enjoining parallel, pending state criminal proceedings. *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013). The doctrine aims to prevent federal courts "from interfering with criminal prosecutions" and to ensure "proper respect for state functions[.]" *Younger v. Harris*, 401 U.S. 37, 44 (1971) (alteration added). The circumstances triggering the *Younger* doctrine are "exceptional" and limited to "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns*, 571 U.S. at 73 (quotation marks and citation omitted).

If the state proceeding falls into one of these categories, the Court applies the three-factor test set out in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), to determine whether *Younger* abstention applies. The *Middlesex* test asks whether: (1) the underlying proceedings constitute ongoing state judicial proceedings; (2) the proceedings

implicate important state interests; and (3) the proceedings provide the federal plaintiff an adequate opportunity to raise constitutional challenges.  *See Middlesex*, 457 U.S. at 432.

   1.  *Younger* Categories.

  The Court first addresses whether Plaintiffs' disciplinary hearings qualify as proceedings covered by *Younger*.  Defendant argues that Plaintiffs' student disciplinary hearings are civil enforcement proceedings akin to criminal prosecutions.  (*See* Reply 9).  Plaintiffs disagree, asserting the proceedings do not involve prosecution under state law, do not result in criminal penalties, and do not implicate the sovereign enforcement interests that justify abstention.  (*See* Sur-Reply 3).

  For abstention purposes, civil proceedings akin to criminal prosecutions "are characteristically initiated to sanction the federal plaintiff . . . for some wrongful act."  *Sprint Commc'ns*, 571 U.S. at 79 (alteration added; citation omitted).  "[A] state actor is routinely a party to the state proceeding and often initiates the action."  *Id.* (alteration added; citation omitted).  "Investigations are commonly involved, often culminating in the filing of a formal complaint or charges."  *Id.* at 79–80 (citations omitted).[6]

  Here, FIU initiated enforcement actions to sanction Plaintiffs for their alleged violations of FIU's Student Conduct and Honor Code.  (*See* Am. Compl. ¶ 1 (alleging FIU "initiated and pursued disciplinary proceedings against [Plaintiffs]" (alteration added))).  FIU qualifies as a state actor.  (*See id.* ¶ 16 ("FIU is a public university and an arm of the State of Florida")).  FIU received

---

[6] Plaintiffs argue "FIU['s] disciplinary process is not the type of quasi-criminal enforcement proceeding contemplated by *Younger*."  (Sur-Reply 3 (alteration added)).  But Plaintiffs misunderstand the doctrine. The Supreme Court has extended *Younger* abstention to "state-filed civil-enforcement proceedings 'brought to vindicate important state policies,' even those that cannot fairly be characterized as 'quasi-criminal.'" *New Ga. Project, Inc. v. Att'y Gen., State of Ga.*, 106 F.4th 1237, 1242 (11th Cir. 2024) (quoting *Trainor v. Hernandez*, 431 U.S. 434, 444 (1977)).

reports regarding Plaintiffs' conduct (*see id.* ¶ 18), investigated those reports, and initiated charges based on alleged violations of FIU's non-discrimination regulation and Student Code of Conduct (*see id.* ¶ 21; *see also id.* 14–15, 20–22, 24–26; *see also* Gonzalez Charge Letters).

Although not binding, the reasoning in *Doe v. University of Kentucky*, 860 F.3d 365 (6th Cir. 2017), is instructive.[7]  In *Doe*, the Sixth Circuit held that a student disciplinary proceeding qualified as a civil enforcement proceeding because it "could have severe consequences, such as expulsion and future career implications[;]" and involved a complaint, investigation, notice of charges, and an opportunity to introduce witnesses and evidence. *Doe*, 860 F.3d at 370 (alteration added).

The same is true here.  Plaintiffs' disciplinary proceedings could have severe consequences, including suspension and future career implications. *See id.*; (*see also* PI Mot. 2 ("FIU's immediate suspension threatens to abruptly and irreparably derail the culmination of [Carvajal's] academic career." (alteration added))).  FIU's disciplinary proceedings afford Plaintiffs' several procedural protections, including written notice of the charges; a fair and impartial hearing, the right to an advisor of their choice and expense, an opportunity to review all relevant information or evidence to be used in the hearing prior to the hearing, the right to present and question witnesses, the ability to invoke the privilege against self-incrimination, and the opportunity to appeal. (*See* Am. Compl. 14–15; *see also id.* 20–22, 24–26; *see also* Gonzalez Charge Letters 2–4).  As in *Doe*, Plaintiffs' disciplinary proceedings "contain[] enough protections and similarities to qualify as 'akin to

---

[7] Plaintiffs argue Defendant's reliance on *Doe* is "misplaced" because *Doe* "is not binding on this Court and involved materially different circumstances." (Sur-Reply 4).  To be sure, the student disciplinary hearing in *Doe* concerned sexual assault allegations, *see Doe*, 860 F.3d at 368, but Plaintiffs do not explain why the subject matter of the disciplinary hearing should alter the Court's *Younger* abstention analysis. At least one district court within the Eleventh Circuit has adopted *Doe*'s reasoning. *See E.F. by and through Ford v. Troup Cnty. Sch. Dist.*, No. 19-cv-141, 2019 WL 11003371, at *3 (N.D. Ga. Oct. 25, 2019) ("[A] lack of Eleventh Circuit law does not preclude this Court from taking guidance from other courts that have addressed the issue of whether *Younger* applies to student disciplinary proceedings." (alteration added)).

criminal prosecutions' for purposes of *Younger* abstention." *Doe*, 860 F.3d at 370 (alteration added).

    2. *Middlesex* Factors.

The Court next turns to the *Middlesex* factors. First, the Court considers whether the underlying proceedings constitute ongoing state judicial proceedings.

Mojena and Ratchkauskas's proceedings have been scheduled for May 20, 2026, and May 15, 2026, respectively, and are therefore ongoing. (*See* Def.'s Not. of Scheduling Student Conduct Hearings). On May 11, 2026, FIU issued disciplinary findings and imposed sanctions against Carvajal and Gonzalez. (*See* PI Mot. 10, 17). FIU explained that Carvajal and Gonzalez may appeal the decision, or if they decline to appeal, the decision will constitute final agency action subject to judicial review through a petition for certiorari review in the appropriate circuit court within 30 days of the final decision. (*See id.* 12, 19).

It does not appear that the Eleventh Circuit has addressed whether proceedings remain ongoing for *Younger* purposes when a plaintiff has not pursued available state judicial review. In *M.R. v. Board of School Commissioners of Mobile County*, No. 11-0245-WS-C, 2012 WL 3778283, at *3 (S.D. Ala. Aug. 30, 2012), the court joined five circuit courts of appeal in holding that proceedings remain ongoing "where state judicial review is available from a final administrative proceeding, even where a plaintiff has not availed [itself] of that judicial review mechanism." *Id.* (alteration added; collecting cases); *see also Moore v. Jud. Inquiry Comm'n of the State of Ala.*, 200 F. Supp. 3d 1328, 1335 (M.D. Ala. 2016) (applying the same rule); *E.F. by and through Ford v. Troup Cnty. Sch. Dist.*, No. 19-cv-141, 2019 WL 11003371, at *4 (N.D. Ga. Oct. 25, 2019) (same); *Parker v. Jud. Inquiry Comm'n of the State of Ala.*, 212 F. Supp. 3d 1171, 1182 (M.D. Ala. 2016) ("[S]tate proceedings, whether judicial or administrative, are considered

13

'ongoing' from the very beginning of the process until the end, as long as the final decision is reviewable by the state court system." (alteration added)); *Barrow v. Hydrick*, No. 24-cv-1975, 2024 WL 2216834, at *4 (N.D. Ga. May 16, 2024) (same).  Plaintiffs provide no reason to depart from this approach.  (*See generally* Sur-Reply).  Thus, the disciplinary proceedings satisfy the first *Middlesex* factor as to all four Plaintiffs.

Second, the Court considers whether the proceedings implicate important state interests. *See Middlesex*, 457 U.S. at 432.  Defendant contends that FIU has an interest in eliminating disruptive and threatening or harassing conduct on its campus.  (*See* Reply 9).  Plaintiffs assert only that the *Middlesex* factors "do not support abstention here" and offer no basis to question FIU's asserted interest.  (Sur-Reply 4).  The Court finds that FIU's asserted interest is important, and the proceedings satisfy the second *Middlesex* factor.

Third, the Court addresses whether the proceedings provide Plaintiffs an adequate opportunity to raise constitutional challenges.  *See Middlesex*, 457 U.S. at 432.  Plaintiffs do not argue that FIU has prevented them from raising their First Amendment claims in their disciplinary proceedings, nor do they contend they cannot raise those claims through FIU's appellate process or subsequent state-court review.  (*See generally* Sur-Reply).  The proceedings therefore satisfy the third *Middlesex* factor.

3. Exceptions to *Younger* Abstention.

The Eleventh Circuit recognizes three exceptions to *Younger* abstention where abstention might otherwise be appropriate: (1) the state proceedings are motivated by bad faith; (2) abstention would result in irreparable injury; or (3) no adequate alternative state forum exists in which to raise constitutional claims.  *See Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1263 n.6 (11th Cir. 2004) (citing *Younger*, 401 U.S. at 45, 53–54).

Plaintiffs do not invoke any *Younger* exception.  They present no evidence of bad faith, irreparable injury as contemplated by *Younger*,[8] or circumstances suggesting that an alternative state forum is unavailable.  (*See generally* Am. Compl.; Resp.; Sur-Reply).  At best, Plaintiffs argue they are suffering "ongoing First Amendment injury through present self-censorship" — which is not recognized as an exception preventing *Younger* abstention.  (Sur-Reply 4).

To the extent Plaintiffs raise a broader First Amendment argument, the Eleventh Circuit has recognized that "[u]ncertainty as to the constitutionality of the statute at issue, or as to the conduct of the state agents implementing the statute, can in itself chill future speech[,]" and that such uncertainty is "one of the costs of *Younger* abstention, given that the doctrine may delay resolution of the First Amendment issue." *For Your Eyes Alone, Inc. v. City of Columbus, GA.*, 281 F.3d 1209, 1219 (11th Cir. 2002) (alterations added).  Nevertheless, "First Amendment concerns do not, in themselves, provide a federal court with justification for interfering with a pending state [] proceeding." *Id.* at 1219 (alteration added); *see also New Ga. Project, Inc.*, 106 F.4th at 1245 ("[I]ndeed, many of the decisions in which the Supreme Court recognized and then expanded abstention doctrine . . . were First Amendment cases." (alterations added; citations omitted)).

In sum, the Court will abstain from exercising jurisdiction over Plaintiffs' claims under *Younger* and its progeny.  Because abstention is appropriate, the remaining question is whether the Court should stay or dismiss the action.

When the "relief being sought is equitable in nature or otherwise discretionary, federal courts not only have the power to stay the action based on abstention principles, but can also . . .

---

[8] Irreparable injury may be shown if the at issue state provision is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 53–54 (quotation marks omitted; citing *Watson v. Buck*, 313 U.S. 387, 402 (1941)).  Plaintiffs do not make this argument.

decline to exercise jurisdiction altogether" by dismissing the suit or remanding it to state court. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 721 (1996) (alteration added). The Supreme Court has not held that federal courts may outright dismiss or remand damages actions. *See id.* In Count I, Plaintiffs exclusively seek equitable relief. (*See* Am. Compl. ¶ 44 ("Plaintiffs are entitled to declaratory and prospective injunctive relief against Defendant . . . in her official capacity." (alteration added))). By contrast, in Count II, Plaintiffs seek damages from Defendant in her individual capacity under section 1983. (*See id.* ¶ 55). The Court thus dismisses Count I, denies dismissal as to Count II, and stays Plaintiffs' claims for damages under section 1983 pending the outcome of the state court proceedings.

### IV. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. Defendant, Jeanette M. Nuñez's Motion to Dismiss **[ECF No. 34]** is **GRANTED in part**. **Count I** of Plaintiffs, Abel Carvajal, Dariel Gonzalez, Ethan Ratchkauskas, and Dante Mojena's Amended Complaint **[ECF No. 29]** is **DISMISSED**.

2. The case is **STAYED** pending resolution of the state proceedings. All pending motions are **DENIED as moot**.

3. The parties shall file joint status updates regarding the ongoing state proceedings **every 60 days** beginning from the date of this Order.

4. The case is **ADMINISTRATIVELY CLOSED**, for statistical purposes only, without prejudice to the substantive rights of any of the parties. Any party may move to reopen the case at the appropriate time; any such motion must be accompanied by a proposed joint scheduling report.

16

CASE NO. 26-21889-CIV-ALTONAGA/Reid

**DONE AND ORDERED** in Miami, Florida, this 15th day of May, 2026.

_____

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

17