**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-21889-CIV-ALTONAGA/Reid**

**ABEL CARVAJAL**, *et al.*,

Plaintiffs,

v.

**JEANETTE M. NUÑEZ**,

Defendant.
______________________/

**ORDER**

**THIS CAUSE** came before the Court on Defendant, Jeanette M. Nuñez's Motion to Dismiss . . . [ECF No. 85], to which she attached Exhibits [ECF Nos. 85-1–85-23]. Plaintiffs, Abel Carvajal, Dariel Gonzalez, Dante Mojena, and Ethan Ratchkauskas filed a Response [ECF No. 89]; and Defendant filed a Reply [ECF No. 90]. The Court has reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is granted in part.

## I. BACKGROUND[1]

***Plaintiffs' Allegations.*** This dispute began off campus during Florida International University's ("FIU['s]") fall 2025 semester. Plaintiffs and others were part of a private group chat,

[1] Defendant attaches 23 exhibits and asks the Court to consider Florida International University's Student Code of Conduct and disciplinary records under the incorporation-by-reference doctrine. (*See* Mot. 12–13; *see generally id.*, Exs. [ECF Nos. 85-1–85-23]). Assuming without deciding that those materials satisfy the doctrine's requirements, the Court declines to consider them. Defendant's records selectively reproduce statements Plaintiffs purportedly made, and her exhibits omit critical details related to the context behind those statements. (*See generally* Mot., Exs.). Given the incomplete presentation and the complexity of the issues presented, the Court finds consideration of Defendant's proffered materials is better suited to a developed factual record. *See Jones v. Auto. Ins. Co. of Hartford*, 917 F.2d 1528, 1531–32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court." (citation omitted)); *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 604 (11th Cir.

in which members exchanged "crude, offensive, and controversial" texts. (Second Am. Compl. ("SAC") [ECF No. 77] ¶ 29; *see also id.* ¶ 1). This non-curricular group chat was not connected to any FIU forum or sponsored event. (*See id.* ¶¶ 22–23).

Each Plaintiff's involvement in the chat varied. Carvajal's alleged role was to "create[] and manage[]" the chat. (*Id.* ¶ 2 (alterations added); *see also id.* ¶ 32 (describing Carvajal as a "monitor and participant" in the chat)). Gonzalez posted statements that included "alleged offensive and controversial remarks concerning race, ethnicity, and religion." (*Id.* ¶ 34). Ratchkauskas had remarks attributed to him that FIU "construed as threats[;]" but which purportedly arose in a "humorous and hyperbolic context" and were understood by participants as "exaggerated, over-the-top language intended in jest" rather than "literal statements[.]" (*Id.* ¶ 35 (alterations added)). Mojena also "participated in a group chat" and was accused of "threaten[ing] to harm others[.]" (*Id.* ¶ 37 (alterations added)). Plaintiffs contend the group chat "contained no illegal speech and no category of unprotected speech such as true threats, incitement, or fighting words." (*Id.* ¶ 29).

The group chat's existence eventually reached FIU. (*See id.* ¶ 22). In March 2026, Defendant — FIU President Nuñez — publicly announced that FIU had reviewed "more than 1,200 pages of evidence concerning the private group chat" and initiated charges for alleged violations of its nondiscrimination regulations and Student Code of Conduct. (*Id.* ¶ 25). She emphasized that FIU and its Board of Trustees "w[ould] not accept, tolerate, or condone any form

1985) ("The court has discretion as to whether to accept material beyond the pleading that is offered in conjunction with a [Rule] 12(b)(6) motion." (alteration added; citation omitted)); *Butts v. ALN Grp., LLC*, 512 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021) (declining to convert motion to dismiss or to look beyond "the four corners of the Complaint" given "the fact-intensive nature of the [] inquiry, the clear benefit of further discovery on this topic, and the parties' [] discovery deadline," while noting defendants remained "free to file a motion for summary judgment on this issue when the factual record has been more fully developed" (alterations added; footnote call number omitted)).

of racism and antisemitism[.]" (*Id.* ¶ 1 (quotation marks omitted; alterations added); *see also id.* ¶¶ 25–26).

On March 5, 2026, Ratchkauskas received an FIU charge letter accusing him of Personal Abuse, Assisting, and Endangerment based on his texts in the group chat. (*See id.* ¶¶ 35–36). Six days later, FIU charged Carvajal with "Assisting," defined as "[a]ny affirmative act which aids, attempts, promotes, conceals, or facilitates any act prohibited by th[e] Code" (*Id.* ¶ 30 (quotation marks omitted; alterations added)). The same day, FIU charged Mojena with "Personal Abuse." (*Id.* ¶ 37).

Gonzalez received a charge letter in March arising from statements he posted in the chat. (*See id.* ¶¶ 3, 33). One set of statements concerned race, ethnicity, and religion and formed the basis of the speech-related portion of Gonzalez's disciplinary complaint. (*See id.* ¶ 34). Separately, FIU relied on additional messages Gonzalez sent to charge him with "Alcohol" — a Code violation for the "[c]ontrol or operation of any mode of transportation while impaired by alcohol." (*Id.* 72 (alteration added); *see also id.* ¶¶ 73–74). According to Plaintiffs, Gonzalez's messages were purely "joking or hyperbolic statements" insufficient to "support a disciplinary finding that he committed that offense." (*Id.* ¶ 75).

Following the disciplinary proceedings, FIU issued decisions against all four Plaintiffs. (*See id.* ¶ 41). FIU also found Gonzalez responsible for the Alcohol violation. (*See id.* ¶ 72). FIU's decisions and resulting sanctions have allegedly caused ongoing constitutional, academic, reputational, and First Amendment injuries, including academic interruptions, restrictions on Plaintiffs' participation in university life, and the continued suppression and chilling of their speech. (*See id.* ¶¶ 7, 11, 28, 49, 54, 57). Plaintiffs attribute emotional distress and other damages

to the disciplinary actions, such as consequences to Gonzalez's academic transcript. (*See id.* ¶¶ 65, 77).

Plaintiffs allege Defendant is responsible for the disciplinary action because she "personally participated in, directed, authorized, ratified, or was causally connected to the decision to investigate, charge, adjudicate, sanction, and punish Plaintiffs based on the content and viewpoint of their speech." (*Id.* ¶ 62; *see also id.* ¶ 19 (alleging Defendant "direct[ed] staff to punish Plaintiffs in response to their alleged viewpoints expressed in the group chat" (alteration added)); *id.* ¶¶ 66–67 (alleging Defendant personally directed, approved, and took an interest in the investigation and disciplinary actions, issued public statements concerning the incidents, and helped advance policies aimed at suppressing Plaintiffs' speech)).

Plaintiffs bring three claims for relief under 42 U.S.C. section 1983: First Amendment claims against Defendant in her official capacity ("Count I") (*see id.* ¶¶ 50–58); First Amendment claims against Defendant in her individual capacity ("Count II") (*see id.* ¶¶ 59–68); and a Fourteenth Amendment procedural due-process claim against FIU on Gonzalez's behalf, arising from FIU's finding that Gonzalez committed the Alcohol violation ("Count III") (*see id.* ¶¶ 69–78). Plaintiffs seek declaratory and injunctive relief concerning the continued enforcement of FIU's disciplinary sanctions; as well as damages, attorney's fees, and costs. (*See id.* 13).[2]

***Procedural History.*** Carvajal filed an initial suit on March 23, 2026 (*see generally* Emergency Verified Compl. . . . [ECF No. 1]); and the other Plaintiffs filed three related actions the Court consolidated with Carvajal's following transfer (*see generally* Mar. 31, 2026 Order [ECF No. 25]). Plaintiffs jointly filed an Amended Complaint on April 1, 2026. (*See generally* Am.

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

Verified Compl. [ECF No. 29]). On May 15, 2026, the Court dismissed Count I of the Amended Complaint and stayed the case under *Younger v. Harris*, 401 U.S. 37 (1971), pending resolution of state proceedings. (*See* May 15, 2026 Order [ECF No. 61] 16).

After FIU denied a final internal appeal, Plaintiffs elected not to seek certiorari review in state court. (*See* SAC ¶¶ 44–48). On July 7, 2026, the Court reopened the case and granted Plaintiffs leave to file the SAC. (*See generally* July 7, 2026 Order [ECF No. 76]). Defendant now moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the SAC, arguing that FIU's disciplinary findings have preclusive effect and Plaintiffs otherwise fail to state a First Amendment or procedural due-process claim. (*See generally* Mot.).

## II. LEGAL STANDARDS

***Rule 12(b)(1).*** "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). It is presumed that a federal court lacks jurisdiction in a case until the party asserting a claim demonstrates the court has jurisdiction over the subject matter. *See id.* Attacks on subject matter jurisdiction are made under Federal Rule of Civil Procedure 12(b)(1) and may be either facial or factual. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990).

The party asserting a claim bears the burden of proving that jurisdiction is proper. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

***Rule 12(b)(6).*** A motion to dismiss for failure to state a claim tests the sufficiency of the pleading; it does not decide the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Milburn v. United States*, 734 F.2d 762, 764–65 (11th Cir. 1984). "To survive a motion to dismiss [under Rule

12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *id.* (alteration added; quoting *Twombly*, 550 U.S. at 555), or "a formulaic recitation of the elements of a cause of action[,]" *Twombly*, 550 U.S. at 555 (alteration added). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (alteration added; citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard[,]" a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alterations added; citing *Twombly*, 550 U.S. at 556). On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

## III. DISCUSSION

Defendant seeks dismissal of the SAC on the basis that the claims are precluded by FIU's findings and for failure to state claims for relief. (*See generally* Mot.). First, the Court concludes that collateral estoppel does not bar Plaintiffs' constitutional claims. Second, the Court finds that Plaintiffs state valid First Amendment claims against Defendant in her official capacity. Third, Plaintiffs' individual-capacity claims and Gonzalez's procedural due-process claim are dismissed as insufficiently pled.

**A. Preclusion**

In her Motion, Defendant presented FIU's unreviewed disciplinary findings as a basis for dismissal, invoking Rules 12(b)(1) and 12(b)(6). (*See* Mot. 6, 13–14). But in her Reply, Defendant expressly agrees that "the preclusion doctrine does not eliminate federal jurisdiction" and "clarifies" that she seeks only to prevent Plaintiffs from relitigating FIU's findings of fact. (Reply 2 (internal quotation marks and citation omitted)). Thus, to the extent that Defendant argued preclusion as a jurisdictional bar, she has since abandoned that incorrect position. Thus, regarding preclusion, the Court only addresses Defendant's argument that Plaintiffs may not relitigate FIU's administrative fact-finding. (*See* Mot. 13–14; Reply 1–3).

***Claim Preclusion.*** It bears noting that an unreviewed administrative decision cannot categorically preclude *claims* in a section 1983 action. *See Gjellum v. City of Birmingham*, 829 F.2d 1056, 1068–70 (11th Cir. 1987) (holding that unreviewed state-agency decisions receive no *res judicata* effect in section 1983 actions regardless of whether state law would bar the claim). Therefore, Plaintiffs' failure to seek review of FIU's final determinations does not, by itself, foreclose their federal claims.

***Issue Preclusion.*** Federal common law dictates that a federal court gives a state agency's fact-finding the preclusive effect it would receive in the state's courts when the agency (1) acted in a judicial capacity, (2) resolved disputed factual issues properly before it, and (3) afforded the parties an adequate opportunity to litigate. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 794–99 (1986). *Elliott* applies only to administrative fact-finding and not an agency's legal conclusions. *See Gjellum*, 829 F.2d at 1068 (noting that *Elliott* "carefully limited its holding to state agency factfinding" (emphasis omitted)). Once *Elliott*'s three threshold conditions are satisfied, a defendant must establish that Florida courts would give the agency's factual findings preclusive

effect under the collateral estoppel doctrine. *See Elliott*, 478 U.S. at 799. "Collateral estoppel . . . prevents parties from relitigating issues that have previously been decided between them." *Sunbelt Cranes Constr. & Hauling, Inc. v. Gulf Coast Erectors, Inc.*, 189 F. Supp. 2d 1341, 1345 (M.D. Fla. 2002) (alteration added; citations omitted).

Under Florida law, when "(1) an identical issue, (2) has been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction[,]" collateral estoppel applies. *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1329 (11th Cir. 2003) (alteration added; citations omitted). Florida requires that the issue have been "actually adjudicated[,]" and its determination must have been "essential to the prior adjudication." *M.C.G. v. Hillsborough Cnty. Sch. Bd.*, 927 So. 2d 224, 226–27 (Fla. 2d DCA 2006) (alteration added; quotation marks omitted; first quoting *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995); then quoting *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005)). The issue must also be identical to a "necessary and material" issue previously resolved. *Seaboard Coast Line R.R. v. Cox*, 338 So. 2d 190, 191 (Fla. 1976).

Defendant has not shown that any discrete factual finding should be treated as conclusively established. A preclusion defense may be resolved under Rule 12(b)(6) only when it can be judged from the face of the complaint. *See Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) (holding that preclusion may be raised in a Rule 12(b)(6) motion when the defense can be judged from the complaint's face, but consideration of matters outside the pleadings converts the motion into one for summary judgment). As the SAC does not reproduce FIU's factual findings — and given the Court does not consider the disciplinary records attached to Defendant's Motion — there are no specific factual issues properly presented for preclusion. The preclusion defense thus cannot be judged from the face of the pleading.

Even if the Court could reach *Elliott*'s threshold conditions and assume they were met, Defendant's collateral estoppel arguments under Florida law are insufficient. First, Defendant identifies FIU's purported findings that Plaintiffs committed "Assisting," "Personal Abuse," and "Endangerment" — facts appearing nowhere in the SAC — asserting that those findings "necessarily resolve[]" that Plaintiffs' statements were "threatening, abusive, and endangering — not protected expression." (Mot. 14 (alteration added); *see generally* SAC). FIU's Code determinations aside, Defendant explains neither which specific factual issues FIU necessarily resolved to that end, nor whether those factual issues were "essential" to FIU's determinations. *M.C.G.*, 927 So. 2d at 227.

Second — and more critically — missing is an identity of issues between FIU's proceedings and Plaintiffs' constitutional claims. FIU's proceedings addressed whether Plaintiffs violated the Code, while this action concerns whether the sanctions FIU ultimately imposed on Plaintiffs violated their First Amendment rights and whether FIU afforded Gonzalez due process under the Fourteenth Amendment. (*See* SAC ¶¶ 50–78). Put differently, FIU's findings that any Plaintiff committed "Personal Abuse," "Endangerment," or "Assisting" do not establish whether the resulting sanctions were unconstitutional content- or viewpoint-based restrictions on Plaintiffs' speech, nor does a finding that Gonzalez committed an "Alcohol" violation decide whether he received adequate process. *See, e.g.*, *Thornquest v. King*, 82 F.3d 1001, 1004 (11th Cir. 1996) (holding that whether a college board retaliated when imposing discipline was not "properly before" the board itself (quotation marks omitted)); *Webb v. Ala. Dep't of Pensions & Sec.*, 850 F.2d 1518, 1520–21 (11th Cir. 1988) (declining to preclude section 1983 due-process claims that were neither decided nor capable of being raised in the original administrative proceeding); *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1321–22 (S.D. Fla. 2014) (declining

preclusion where the administrative review was narrower than the later constitutional action and recognizing that collateral estoppel does not apply when "the scope of the administrative hearing is much narrower than a subsequent lawsuit" (quotation marks omitted; quoting *Hercules Carriers, Inc. v. Claimant State of Fla., Dep't of Transp.*, 768 F.2d 1558, 1581 n.16 (11th Cir. 1985))).

For these reasons, Defendant fails to persuade that Plaintiffs' claims should be dismissed as precluded by FIU's administrative fact-finding.

**B. Other Asserted Grounds for Dismissal**

Turning to Defendant's remaining grounds for dismissal, for the reasons explained below, those grounds do not warrant dismissal of Count I, but Counts II and III cannot proceed.

**1. First Amendment Official-Capacity Claims (Count I)**

**a. Public University Speech Framework**

***Content-Based Restrictions.*** A restriction is content based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022) (quotation marks omitted; quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). Viewpoint discrimination is a more specific and "blatant" form of content discrimination that targets "particular views taken by speakers on a subject[.]" *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (alteration added; citation omitted). Content-based restrictions are presumptively unconstitutional and ordinarily subject to strict scrutiny, *see Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1125–26 (11th Cir. 2022); indeed, viewpoint discrimination is prohibited even in a nonpublic forum, *see Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1321 (11th Cir. 2005).

To determine whether a restriction is content based, one asks whether the restriction turns on the speech's substance. *See City of Austin*, 596 U.S. at 69–74. When the regulated conduct

"depends on — and cannot be separated from — the ideas communicated," the restriction "is functionally a regulation of speech." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1278 (11th Cir. 2024) (citation omitted); *see also id.* (asking "whether the message matters, or just the action"); *Otto v. City of Boca Raton*, 981 F.3d 854, 862 (11th Cir. 2020) ("One reliable way to tell if a law restricting speech is content-based is to ask whether enforcement authorities must 'examine the content of the message that is conveyed' to know whether the law has been violated." (quoting *McCullen v. Coakley*, 573 U.S. 464, 479 (2014))).

***True Threats and Public Universities.*** True threats fall outside the First Amendment's protection and encompass serious expressions conveying that a speaker means to commit unlawful violence. *See Counterman v. Colorado*, 600 U.S. 66, 74 (2023). In *Counterman*, the Supreme Court held that a true-threat prosecution requires proof that the speaker at least "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Id.* at 69.

Schools are permitted to regulate student speech that, although not a true threat, materially disrupts classwork, causes substantial disorder, or invades the rights of others. *See Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 513 (1969). A school need not await actual disruption, but its forecast must rest on more than "undifferentiated fear or apprehension of disturbance[.]" *Id.* at 508 (alteration added); *see also id.* at 514. A school's regulatory interests are diminished — although not non-existent— with respect to off-campus speech, particularly when political or religious expression is involved. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 188–91 (2021); *see also Doe v. Valencia Coll.*, 903 F.3d 1220, 1231 (11th Cir. 2018). The Eleventh Circuit has applied *Tinker* in the college setting. *See, e.g.*, *Valencia Coll.*, 903 F.3d at 1229–31.

**b. Plaintiffs' First Amendment Claims**

With this framework in mind, the Court considers whether each Plaintiff states a First Amendment official capacity claim.

***Ratchkauskas.*** FIU charged Ratchkauskas with "Personal Abuse," "Assisting," and "Endangerment" based on statements it construed as threats. (*See* SAC ¶¶ 35–36). Ratchkauskas alleges the remarks arose in a humorous and hyperbolic context, and participants understood them as exaggerated language uttered in jest and not literal statements. (*See id.* ¶ 35). These descriptions bear the hallmarks of expression protected under the First Amendment. *See, e.g.*, *Moms for Liberty-Brevard Cnty., Fla. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1334 (11th Cir. 2024) (reaffirming that it is "'firmly settled' under [the] Constitution that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers'" (alteration added; quoting *Street v. New York*, 394 U.S. 576, 592 (1969))). Plaintiffs' alleged context surrounding Ratchkauskas's statements further supports a reasonable inference that his remarks did not communicate a serious expression of intended violence. (*See* SAC ¶ 35); *Watts v. United States*, 394 U.S. 705, 708 (1969) (considering the statement's "context," its "conditional nature[,]" and "reaction of the listeners" in distinguishing "political hyperbole" from a threat (alteration added)); *Counterman*, 600 U.S. at 74 (distinguishing true threats from jest and hyperbole that do not convey a real possibility of violence in context).

Defendant argues that descriptions such as "humorous," "exaggerated," and "hyperbolic" are merely conclusory adjectives. (Reply 5). The Court disagrees. These descriptive facts concern the remarks' context and meaning to recipients, from which the Court may draw its own conclusions. Moreover, the absence of verbatim quotations of Ratchkauskas's remarks in the pleading does not defeat his First Amendment claim. *See, e.g.*, *Huggins v. Sch. Dist. of Manatee*

*Cnty.*, 151 F.4th 1268, 1280–81 (11th Cir. 2025) (sustaining a viewpoint-discrimination claim where the plaintiff identified only the subject matter of his intended remarks for speech he was prevented from delivering).

Defendant also challenges the allegation that the speech caused no substantial disruption and invokes *Tinker*'s independent protection of others' rights. (*See* Mot. 11; Reply 5). But Defendant — not Plaintiffs — must identify a factual basis for the asserted justification, and the SAC does not establish as much. *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1273 (11th Cir. 2004) (requiring "demonstrable factors" supporting a "reasonable forecast" of substantial disruption "before expression may be constitutionally restrained" (quotation marks omitted; quoting *Shanley v. Ne. Indep. Sch. Dist.*, 462 F.2d 960, 974 (5th Cir. 1972))); *Evans v. Bayer*, 684 F. Supp. 2d 1365, 1376 (S.D. Fla. 2010) ("While subsequent development of the facts may establish such disruption; the facts as pled, do not.").[3] And Defendant's reliance on a school's authority to restrict speech promoting illegal activity likewise supplies no basis for dismissal because Plaintiffs' well-pled allegations do not show that Ratchkauskas's remarks promoted such activity. (*See* Mot. 7, 15; *see also* SAC ¶ 35).

***Gonzalez.*** Gonzalez received a March 2026 charge letter concerning statements he allegedly posted in the group chat, and some of the statements that served as a basis for his disciplinary complaint concerned race, ethnicity, and religion. (*See* SAC ¶¶ 33–34). These remarks — described as "offensive" — are precisely the kind of subject matter protected by the

[3] *See also N.J. ex rel. Jacob v. Sonnabend*, 37 F.4th 412, 426 (7th Cir. 2022) (explaining that "*Tinker* places the burden of justifying student-speech restrictions squarely on school officials" and requiring factual support for anticipated disruption or invasion of others' rights (citation omitted)); *Chandler v. McMinnville Sch. Dist.*, 978 F.2d 524, 531 (9th Cir. 1992) (reversing a Rule 12(b)(6) dismissal where the complaint did not substantiate the school's disruption rationale while recognizing that "[p]erhaps, after trial or summary judgment, the record might support the school officials' actions" (alteration added)).

First Amendment. (*Id.* ¶ 34); *see Speech First*, 32 F.4th at 1126 (concluding that a public university's discriminatory-harassment policy drew "facial distinctions . . . defining regulated speech by particular subject matter" by "prohibit[ing] speech about any of a long list of characteristics — *e.g.*, race, sex, political affiliation, etc." (alteration adopted; other alteration added; quotation marks omitted; quoting *Reed*, 576 U.S. at 163))[4]; *see also Moms for Liberty*, 118 F.4th at 1334–39. The allegations concerning Gonzalez's remarks — like Ratchkauskas's — do not indicate the promotion of illegal activity. (*See* SAC ¶¶ 33–34).

When announcing the disciplinary charges against Plaintiffs, Defendant declared the school would not "accept, tolerate, or condone any form of racism and antisemitism at FIU." (SAC ¶ 26 (quotation marks omitted); *see also id.* ¶ 25). Considered alongside Gonzalez's alleged remarks about race, ethnicity, and religion, Defendant's statement supports a reasonable inference that FIU punished Gonzalez for viewpoints it attributed to his speech. (*See id.* ¶ 34); *Huggins*, 151 F.4th at 1281 (drawing a "reasonable inference" from well-pled allegations to conclude defendant restricted plaintiff's speech because of his opinions).

As with Ratchkauskas, the allegations related to Gonzalez's speech are factually sufficient to support a plausible claim of viewpoint discrimination; there is no requirement that Gonzalez reproduce his posts verbatim in the pleading. *See id.* Any factual basis for the justification behind FIU's alleged restriction of Gonzalez's speech — such as a substantial disruption or the invasion of others' rights — may be developed after discovery. *See, e.g.*, *Evans*, 684 F. Supp. 2d at 1376.

[4] Defendant argues that *Speech First* is inapposite because it involved a *pre-* rather than *post*-enforcement facial challenge to university speech policies. (*See* Mot. 16–17). That distinction does not diminish the relevance of *Speech First*'s stated principles governing content- and viewpoint-based restrictions on student speech. *See Speech First*, 32 F.4th at 1126–28.

***Mojena.*** FIU's March 11, 2026 charge letter accused Mojena of participating in a group chat where he threatened to harm others and charged him with Personal Abuse under FIU's Code. (*See* SAC ¶ 37). FIU separately told him that he may have participated in, or witnessed, behavior implicating the Code and FIU's nondiscrimination, harassment, and retaliation regulations. (*See id.* ¶ 38). Defendant does not seek to dismiss Mojena's individual claim as deficient for any failure of the SAC to plead facts related to Mojena's own speech; Defendant seeks dismissal on grounds common to Plaintiffs' First Amendment claims (*see generally* Mot.)[5] — grounds the Court has rejected in analyzing Ratchkauskas's and Gonzalez's claims.

Defendant bears the burden of showing entitlement to dismissal, and she has not carried that burden as to Mojena. Whether allegations specific to Mojena are sufficiently particularized is a question Defendant does not raise, and the Court will not supply an argument she has not made. *See Danow v. Borack*, 197 F. App'x 853, 856–57 (11th Cir. 2006) (reversing dismissal of claims the defendant had not moved to dismiss where the plaintiff lacked notice and an opportunity to respond); *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (recognizing "[t]he onus is upon the parties to formulate arguments" (alteration added; quotation marks omitted; quoting *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995))).

***Carvajal.*** FIU allegedly charged Carvajal with "Assisting" in Code violations because he "created and managed the group chat where others posted statements threatening to harm others." (SAC ¶ 2). Defendant maintains Plaintiffs' statements were "not protected expression" (Mot. 14); as to Carvajal, however, that argument necessarily depends on the character of *others*' messages,

[5] To the extent that Defendant raises new arguments on this issue for the first time in her Reply, such arguments are untimely, and the Court declines to consider them. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (recognizing that "[a]rguments raised for the first time in a reply brief are not properly before a reviewing court" (alteration adopted; quotation marks and citation omitted)).

as the SAC identifies no statement Carvajal made or any basis for the charge against him apart from his role creating, managing, monitoring, and receiving information from the group chat. (*See* SAC ¶¶ 30, 32).

To begin, Plaintiffs describe the group chat as one "in which participants posted controversial and allegedly offensive political speech[,]" (SAC ¶ 22 (alteration added)), including "offensive and controversial remarks concerning race, ethnicity, and religion[,]" (*id.* ¶ 34 (alteration added)). These included remarks that, although FIU "construed [them] as threats[,]" arose in a "humorous and hyperbolic context[]" and were understood by participants as "exaggerated, over-the-top language intended in jest" rather than "literal statements[.] " (*Id.* ¶ 35 (alterations added)). Accepted as true, those allegations place the messages within the First Amendment's protection, since "[r]estrictions that bar offensive or otherwise unwelcome speech are impermissible[.]" *Moms for Liberty*, 118 F.4th at 1334 (alterations added).

Further, the alleged threatening character of the messages supplied the predicate for punishing Carvajal for his creation and management of the chat. (*See* SAC ¶¶ 2, 30, 32). Drawing all reasonable inferences in Carvajal's favor, FIU officials allegedly did more than read the text messages for a content-neutral criterion — they read the messages for their substance, determined the substance violated the Code, and that determination was the basis for Carvajal's "Assisting" charge and sanction. *See City of Austin*, 596 U.S. at 69–74. Plaintiffs therefore plausibly allege that FIU's treatment of Carvajal was based on the content of facially protected speech. *See Honeyfund.com*, 94 F.4th at 1278; *Otto*, 981 F.3d at 861–62.[6]

[6] Plaintiffs frame Carvajal's claim as punishment for monitoring the chat and receiving information (*see* SAC ¶ 32), but an imperfect statement of the supporting legal theory does not warrant dismissal where the operative facts are sufficiently pleaded. *See Johnson v. City of Shelby*, 574 U.S. 10, 11–12 (2014) (per curiam). Carvajal's allegations identify his charge and punishment, and their dependence on others' protected expression (*see* SAC ¶¶ 30–32), which together state a plausible First Amendment claim.

**2. First Amendment Individual-Capacity Claims (Count II)**

In Count II, Plaintiffs allege First Amendment claims against Defendant in her individual capacity. (*See* Mot. 17–19). Defendant contends that Plaintiffs insufficiently plead her personal participation in the alleged constitutional violations, and in any event that Defendant is entitled to qualified immunity. (*See id.*; Reply 6–7). The Court agrees with Defendant's first argument.

Section 1983 does not impose vicarious liability on supervisory officials for their subordinates' unconstitutional acts. *See Piazza v. Jefferson Cnty.*, 923 F.3d 947, 957 (11th Cir. 2019). Consequently, a plaintiff must allege the supervisor personally participated in the constitutional violation or that a causal connection exists between the supervisor's actions and the violation. *See Henley v. Payne*, 945 F.3d 1320, 1331 (11th Cir. 2019). Although the standard for supervisory liability is "extremely rigorous[,]" *Piazza*, 923 F.3d at 957 (alteration added; quotation marks and citation omitted), the pleading inquiry remains whether the complaint contains sufficient factual matter, rather than mere legal conclusions, to state a plausible claim, *see Iqbal*, 556 U.S. at 678–79.

Plaintiffs do not satisfy that requirement. Admittedly, Plaintiffs allege Defendant "personally participated in, directed, authorized, ratified, or was causally connected to" the decision to investigate, charge, adjudicate, sanction, and punish them. (SAC ¶ 62). They similarly allege Defendant "direct[ed] staff to punish Plaintiffs" (*id.* ¶ 19 (alteration added)); was "personally directed, approved, and took a personal interest" in the disciplinary actions (*id.* ¶ 66); and was "directly and personally involved" in promoting policies aimed at suppressing their speech (*id.* ¶ 67). These recitations identify possible bases for liability and characterize Defendant's involvement, but they supply no particularized facts explaining Defendant's *personal* role in the challenged decisions, aside from taking institutional action.

Plaintiffs' other allegations do not provide the missing connection. Plaintiffs allege Defendant publicly announced on March 10, 2026, that FIU had reviewed more than 1,200 pages of evidence and initiated disciplinary charges. (*See id.* ¶ 25). The announcement likewise describes institutional action but does not explain how Defendant personally participated in the alleged violations of Plaintiffs' rights. (*See id.*). Nor does her statement that FIU "will not accept, tolerate, or condone any form of racism and antisemitism" identify any disciplinary action she personally directed or undertook. (*Id.* ¶ 26). These statements bear on Plaintiffs' theory of why FIU enforced its regulations, but they do not plausibly show that Defendant personally participated in the alleged constitutional violations. *See Henley*, 945 F.3d at 1331; *see, e.g.*, *Gomez v. City of Miami*, 696 F. Supp. 3d 1176, 1195 (S.D. Fla. 2023) (dismissing a First Amendment retaliation claim against a supervisor in his individual capacity where the plaintiff failed to plead that the supervisor had a "decisive role," or "set forth any facts which would identify such a 'decisive role,' in the alleged retaliation" (quotation marks omitted)).

Absent personal participation, "a supervisor is liable only if the plaintiff can show that the supervising official's actions caused the alleged constitutional deprivation" *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025) (citations omitted). One can do that by "show[ing] that a supervisor's custom or policy reflected deliberate indifference to the plaintiff's constitutional rights." *Id.* (alteration added; citation omitted). Plaintiffs make no such showing. A "single incident of a constitutional violation is insufficient to prove a policy or custom[,]" *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1311 (11th Cir. 2011) (alteration added), and Plaintiffs describe merely one investigation arising from one group chat (*see generally* SAC).

Count II is therefore dismissed.[7] Because Plaintiffs do not state a claim against Defendant in her individual capacity, the Court does not reach the qualified-immunity defense. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (expressing that district courts may "exercise their sound discretion" in deciding whether to determine if a plaintiff has satisfactorily pled a constitutional deprivation before addressing whether the asserted right is clearly established).

**3. Gonzalez's Fourteenth Amendment Claim (Count III)**

The Court next considers Defendant's arguments for dismissal of Count III — Gonzalez's procedural due process claim. (*See* Mot. 19–21). Defendant argues FIU is both immune from suit under the Eleventh Amendment and not a person subject to liability under section 1983; and that Gonzalez's procedural due process claim fails because Gonzalez declined an adequate state remedy and received all the process that was constitutionally required. (*See id.*; Reply 7–9). The Court agrees the claim in Count III fails because Gonzalez declined to avail himself of an available and adequate state corrective process.

A procedural due process violation becomes actionable only when the state fails to provide a process sufficient to remedy the alleged deprivation. *See McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). A student thus cannot establish such a violation when adequate state-court review was available to address the alleged deficiencies in the university's proceedings. *See Valencia Coll.*, 903 F.3d at 1235 (rejecting a suspended Florida student's procedural due process

[7] This conclusion does not implicate Plaintiffs' official-capacity claim for prospective relief. Personal participation in the alleged deprivation is not a prerequisite to such relief, provided the official has a sufficient connection to the challenged action. *See Luckey v. Harris*, 860 F.2d 1012, 1015 (11th Cir. 1988) (explaining that "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity" and that [a]ll that is required is that the official be responsible for the challenged action" (alterations added)). Plaintiffs allege Defendant has authority over the disciplinary process sufficient to justify the requested prospective relief, an inquiry distinct from whether her own conduct supports personal liability for *damages*. (*See* SAC ¶¶ 56–58, 68); *see Luckey*, 860 F.2d at 1015. Dismissal of Count II thus leaves the request for prospective relief in Count I undisturbed.

claim because certiorari review — which was available "as a matter of right" in Florida — provided an adequate remedy); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007) (affirming dismissal where the student "ha[d] not presented any reason to believe that he could not receive a procedural remedy through a state court proceeding" (alteration added)).

The same reasoning applies here. Gonzalez challenges FIU's finding of responsibility for the "Alcohol" violation as unsupported by substantial evidence. (*See* SAC ¶¶ 73–75). Plaintiffs acknowledge FIU denied their internal appeals and completed its disciplinary process — and that they opted not to seek state-court certiorari review and expressly disclaim any intent to do so. (*See id.* ¶¶ 10, 43, 45, 47–48).[8] Plaintiffs fail to show any inadequacy in Gonzalez's state-court remedy that would prevent review of his challenge to the evidentiary basis for FIU's decision. (*See id.* ¶¶ 69–78). That failure, along with the availability of adequate corrective process, defeats Gonzalez's procedural due process claim. *See Valencia Coll.*, 903 F.3d at 1235; *Watts*, 495 F.3d at 1294.

Count III therefore fails to state a claim. Because the Court's disposition of Count III favors Defendant, the Court need not reach her Eleventh Amendment argument or the related question of whether FIU is a proper defendant. *See McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1257–58 (11th Cir. 2001) (explaining that because the Eleventh Amendment "does not automatically deprive a court of original jurisdiction" and instead "grants the State a legal power to assert a sovereign immunity defense should it choose to do so[,]" defendants "are free to

---

[8] Plaintiffs identify Florida's Third District Court of Appeal as the reviewing court. (*See* SAC ¶¶ 10, 45). But review of a Florida university's disciplinary decision lies in the circuit court through a petition for certiorari. *See Couchman v. Univ. of Cent. Fla.*, 84 So. 3d 445, 449–50 (Fla. 5th DCA 2012) (en banc) (holding that university's disciplinary decision was "not subject to challenge under [Florida's Administrative Procedure Act]" and transferring the proceeding to the circuit court for certiorari review (alteration added)). Such review is available as a matter of right. *See Valencia Coll.*, 903 F.3d at 1235.

conditionally assert that defense in order to allow a federal court to decide in their favor on the merits" (alteration added; quotation marks and citations omitted)).

**C. Leave to Amend**

Finally, Plaintiffs request leave to amend to cure any pleading deficiencies. (*See* Resp. 18–21). That request is procedurally improper. Plaintiffs have neither moved for leave to amend nor submitted a proposed amended pleading, as required by Local Rule 15.1 of the United States District Court for the Southern District of Florida. *See* S.D. Fla. L.R. 15.1; *see also Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) (explaining that a request for leave to amend embedded in an opposition memorandum does not properly present the issue). Plaintiffs' request for leave to amend found in the Response does not satisfy those requirements.

Even if a request was properly presented, Plaintiffs fail to establish good cause. The Court's Order Setting Trial and Pretrial Schedule . . . [ECF No. 81] set July 30, 2026, as the deadline to amend pleadings. (*See id.* 1). A party seeking amendment after the pleading deadline must first establish good cause to modify that deadline under Rule 16(b)(4) before the Court considers whether leave to amend is appropriate. *See* Fed. R. Civ. P. 16(b)(4); *see, e.g.*, *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) ("[B]ecause Sosa's motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." (alteration added; citations omitted)).

Good cause requires a showing that the deadline could not be met "despite the diligence of the party seeking the extension." *Id.* at 1418 (quotation marks and citation omitted). Although Plaintiffs assert that amendment might cure the identified deficiencies, they do not explain why they could not have timely sought to make those amendments despite diligent efforts. (*See*

*generally* Resp.). Plaintiffs therefore have not established good cause to modify the Scheduling Order; as such, their request for leave to amend is denied.

## IV. CONCLUSION

As a result, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant, Jeanette M. Nuñez's Motion to Dismiss . . . **[ECF No. 85]** is **GRANTED in part.**

2. Counts II and III of the Second Amended Verified Complaint . . . **[ECF No. 77]** are **DISMISSED**.

3. Defendant has until **September 28, 2026**, to file an answer to the SAC.

**DONE AND ORDERED** in Miami, Florida, this 14th day of September, 2026.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record