UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-21889-CIV-ALTONAGA/Reid

ABEL CARVAJAL, *et al.*,
Plaintiffs,
v.

JEANETTE M. NUÑEZ,
Defendant.
______________________/

**PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs Abel Carvajal, Dariel Gonzalez, Ethan Ratchkauskas, and Dante Mojena, pursuant to Federal Rule of Civil Procedure 65, respectfully move for entry of a preliminary injunction enjoining Defendant Jeanette M. Nuñez, in her official capacity as President of Florida International University ("FIU"), from continuing to enforce the disciplinary sanctions imposed against Plaintiffs arising from the private, off-campus speech challenged in Count I of the Second Amended Verified Complaint [ECF No. 77], and state:

**INTRODUCTION**

The procedural posture of this case has materially changed.

On September 14, 2026, this Court entered its Order on Defendant's Motion to Dismiss [ECF No. 91]. The Court rejected Defendant's effort to dismiss Count I and expressly concluded that "Plaintiffs state valid First Amendment claims against Defendant in her official capacity." ECF No. 91 at 6. The Court dismissed Counts II and III, but Count I—the First Amendment claim seeking prospective relief on behalf of all four Plaintiffs—remains pending.

The Court's Order did considerably more than simply permit Count I to survive. In addressing Defendant's arguments, the Court held that Plaintiffs' constitutional claims are not foreclosed by FIU's administrative findings; recognized that the alleged humorous and hyperbolic context of Ratchkauskas's statements supports a reasonable inference of protected expression; concluded that the allegations concerning Gonzalez plausibly support viewpoint discrimination; rejected Defendant's common grounds for dismissal as to Mojena; and concluded that Carvajal plausibly alleged punishment based upon the content of facially protected speech.

The Court has therefore resolved Defendant's threshold pleading challenges to Count I in Plaintiffs' favor. While that ruling does not itself decide the Rule 65 inquiry, the Court's detailed First Amendment analysis materially strengthens Plaintiffs' showing of a substantial likelihood of success and warrants renewed consideration of preliminary injunctive relief.

Meanwhile, the challenged sanctions remain in force. Plaintiffs continue to suffer the consequences of suspension or expulsion based upon speech that, as alleged and now recognized by this Court as sufficient to state constitutional claims, occurred in a private, non-curricular, off-campus group chat.

The First Amendment injury is not hypothetical. FIU has already punished Plaintiffs, continues to enforce that punishment, and continues to chill their expression.

Preliminary relief is warranted.

## I. BACKGROUND

Plaintiffs were participants in a private group chat during FIU's fall 2025 semester. The group chat was non-curricular and was not connected to any FIU forum or University-sponsored event. Second Am. Verified Compl. ("SAC") [ECF No. 77] ¶¶ 22–23.

Plaintiffs' involvement varied substantially. Carvajal allegedly created and managed the group chat. Gonzalez posted statements concerning, among other subjects, race, ethnicity, and religion. Statements attributed to Ratchkauskas were characterized by Plaintiffs as humorous, hyperbolic, exaggerated, and intended in jest rather than as literal threats. Mojena was also accused of making statements FIU characterized as threatening. *See* SAC ¶¶ 29–38.

FIU subsequently initiated disciplinary proceedings against all four Plaintiffs. Defendant publicly announced that FIU had reviewed more than 1,200 pages of material concerning the private group chat and declared that FIU would not "accept, tolerate, or condone any form of racism and antisemitism." *Id.* ¶¶ 25–26.

FIU ultimately imposed disciplinary sanctions against all four Plaintiffs. Those sanctions continue to cause alleged constitutional, academic, reputational, and First Amendment injuries, including interruption of Plaintiffs' education, restrictions on participation in University life, and suppression and chilling of their speech. *Id.* ¶¶ 7, 11, 28, 41, 49, 54, 57.

Plaintiffs challenge the continuing enforcement of those sanctions through Count I of the SAC, which asserts First Amendment claims against Defendant in her official capacity and seeks prospective declaratory and injunctive relief.

On September 14, 2026, the Court denied Defendant's request to dismiss

Count I. ECF No. 91. Count I therefore remains pending as to all four Plaintiffs.

## II. LEGAL STANDARD

A preliminary injunction is appropriate where the movant establishes: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not entered; (3) that the threatened injury outweighs whatever damage the injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *FF Cosmetics FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1298 (11th Cir. 2017).

Each factor favors relief here.

Most significantly, this Court has now examined Defendant's substantive challenges to Plaintiffs' First Amendment claims and expressly held that all four Plaintiffs state valid official-capacity First Amendment claims. ECF No. 91 at 6.

## III. PLAINTIFFS HAVE DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THEIR FIRST AMENDMENT CLAIMS.

### A. The Court Has Already Rejected Defendant's Threshold Challenges to Count I.

The September 14 Order materially changes the posture of Plaintiffs' request for preliminary relief.

The Court expressly concluded that "Plaintiffs state valid First Amendment claims against Defendant in her official capacity." ECF No. 91 at 6.

The Court also rejected Defendant's attempt to use FIU's administrative proceedings to foreclose Plaintiffs' constitutional claims. It explained that an unreviewed administrative decision does not categorically preclude claims brought under § 1983 and that Plaintiffs' failure to seek judicial review of FIU's final determinations does not, by itself, foreclose their federal claims. *Id.* at 7.

More critically, the Court found an absence of identity between the issues addressed in FIU's proceedings and the constitutional issues presented here. FIU determined whether Plaintiffs violated its Student Code. This action asks whether FIU's resulting sanctions violate the First Amendment. *Id.* at 9.

FIU's administrative characterization of speech as "Personal Abuse," "Endangerment," or "Assisting" therefore does not establish that the resulting sanctions are constitutional.

The Court also declined to consider Defendant's disciplinary exhibits at the motion-to-dismiss stage, explaining that Defendant's records "selectively reproduce statements Plaintiffs purportedly made" and "omit critical details related to the context behind those statements." *Id.* at 1 n.1.

That context is central to the First Amendment analysis. Defendant cannot establish the constitutionality of the sanctions simply by accepting FIU's own characterization of Plaintiffs' speech.

**B. Ratchkauskas Has Demonstrated a Substantial First Amendment Claim Based on the Alleged Humorous and Hyperbolic Context of His Speech.**

As to Ethan Ratchkauskas, the Court recognized that the alleged statements FIU construed as threats purportedly arose in a "humorous and hyperbolic context" and were understood by participants as "exaggerated, overthe-top language intended in jest" rather than literal statements. ECF No. 91 at
12.

The Court concluded that these allegations "bear the hallmarks of expression protected under the First Amendment." *Id.*

That conclusion is firmly supported by Supreme Court precedent. The constitutional true-threat inquiry requires consideration of context and

distinguishes genuine threats of unlawful violence from jest, hyperbole, and exaggerated rhetoric. *See Counterman v. Colorado*, 600 U.S. 66, 69, 74 (2023); *Watts v. United States*, 394 U.S. 705, 708 (1969).

The Court further rejected Defendant's characterization of words such as "humorous," "exaggerated," and "hyperbolic" as merely conclusory, explaining that those allegations concern the context and meaning of the remarks to their recipients. ECF No. 91 at 12.

The First Amendment does not permit FIU to transform protected hyperbole into a genuine threat merely by labeling it one.

**C. Gonzalez Has Demonstrated a Substantial Viewpoint-Discrimination Claim.**

The Court's analysis of Dariel Gonzalez likewise strongly supports preliminary relief.

Gonzalez's statements concerned race, ethnicity, and religion and were characterized as offensive. ECF No. 91 at 13–14. The Court recognized that this is precisely the type of controversial subject matter protected by the First Amendment.

Public universities may not suppress expression merely because its message is offensive. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022); *Moms for Liberty-Brevard County, Florida v. Brevard Public Schools*, 118 F.4th 1324, 1334–39 (11th Cir. 2024).

More significantly, Defendant publicly declared that FIU would not "accept, tolerate, or condone any form of racism and antisemitism." SAC ¶ 26.

The Court expressly considered that statement together with Gonzalez's alleged remarks concerning race, ethnicity, and religion and concluded that

Defendant's statement "supports a reasonable inference that FIU punished Gonzalez for viewpoints it attributed to his speech." ECF No. 91 at 14.

Viewpoint discrimination is a particularly egregious form of content discrimination. *Rosenberger v. Rector & Visitors of University of Virginia*, 515 U.S. 819, 829 (1995).

The government may condemn a viewpoint. It may disagree with it. But a public university may not impose punishment merely because it finds the viewpoint expressed offensive or objectionable.

**D. Mojena's First Amendment Claim Remains Viable Under the Same Constitutional Framework.**

The Court likewise refused to dismiss Dante Mojena's First Amendment claim.

FIU accused Mojena of participating in the group chat and making statements it characterized as threatening. SAC ¶¶ 37–38.

Defendant sought dismissal based on grounds common to Plaintiffs' First Amendment claims. The Court rejected those grounds in analyzing Ratchkauskas's and Gonzalez's claims and held that Defendant had not carried her burden as to Mojena. ECF No. 91 at 15.

Mojena therefore remains entitled to litigate whether FIU constitutionally punished his private, off-campus speech.

The constitutional question cannot be answered merely by adopting FIU's description of the speech. Context, meaning, the nature of the statements, and the asserted justification for punishment remain material.

**E. Carvajal Plausibly Alleges Punishment Based on the Content of Facially Protected Speech.**

The Court's analysis of Abel Carvajal provides an especially compelling basis for preliminary relief.

FIU did not allegedly discipline Carvajal because he personally authored a true threat. Rather, FIU charged him with "Assisting" based on his role in creating and managing the group chat. SAC ¶¶ 2, 30, 32.

As the Court recognized, Defendant's justification for Carvajal's punishment necessarily depends upon the content of statements made by other participants.

FIU officials read the messages for their substance, determined that their substance violated the Student Code, and used that determination as the predicate for Carvajal's "Assisting" charge and resulting sanction.

The Court therefore concluded that Plaintiffs plausibly allege that "FIU's treatment of Carvajal was based on the content of facially protected speech." ECF No. 91 at 16.

Content-based restrictions on speech are presumptively unconstitutional. *See Speech First*, 32 F.4th at 1125–26.

Punishing a student for creating or managing a private forum in which others engage in facially protected expression presents a substantial First Amendment problem. FIU cannot evade constitutional scrutiny by characterizing the maintenance of a private communication forum as "Assisting" when the predicate conduct is protected speech.

**F. Defendant Has Not Established the Substantial Disruption Required Under *Tinker*.**

Defendant previously relied on *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), to justify FIU's regulation of Plaintiffs' speech.

The Court's September 14 Order substantially undermines that argument at this stage.

*Tinker* permits regulation of student speech where the school demonstrates material and substantial disruption, substantial disorder, or invasion of the rights of others. *Id.* at 513. A school need not await actual disruption, but any forecast of disruption must rest on more than "undifferentiated fear or apprehension of disturbance." *Id.* at 508.

The Court specifically recognized that Defendant—not Plaintiffs—must identify the factual basis for the asserted justification. ECF No. 91 at 13. The Court concluded that the SAC does not establish such a factual basis and stated that any justification based on substantial disruption or invasion of others' rights may be developed after discovery. *Id.*at 13–14.

The off-campus nature of the speech further matters. A school's regulatory interests are diminished with respect to off-campus speech, particularly where political or religious expression is involved. *Mahanoy Area School District v. B.L.*, 594 U.S. 180, 188–91 (2021).

Here, the communications occurred in a private, non-curricular group chat unaffiliated with an FIU forum or sponsored event.

FIU cannot satisfy its First Amendment burden merely by invoking generalized concerns about safety or disruption. The Constitution requires more.

Taken together, the Court's September 14 findings strongly support Plaintiffs' showing of a substantial likelihood of success on Count I.

## **IV. PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE FIRST AMENDMENT INJURY.**

Plaintiffs' injuries are not speculative, hypothetical, or remote.

FIU has already acted.

It investigated Plaintiffs' private speech, initiated disciplinary proceedings, imposed sanctions, denied Plaintiffs' internal appeals, and continues to enforce the resulting punishment.

Plaintiffs consequently remain subject to substantial educational and constitutional consequences arising directly from the speech challenged in Count I.

The Supreme Court has long recognized that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

The Eleventh Circuit similarly recognizes self-censorship caused by a credible threat of enforcement as a concrete First Amendment injury. *Speech First*, 32 F.4th at 1119–21.

Here, the threat of enforcement is not merely credible—it has already materialized.

Plaintiffs reasonably understand that FIU is willing to investigate and impose severe academic sanctions based upon communications occurring in private, off-campus conversations. The resulting chilling effect is immediate and ongoing.

The sanctions also continue to interfere with Plaintiffs' academic progress, participation in University life, educational opportunities, and reputations.

Money damages cannot restore speech never uttered, conversations avoided, associations chilled, or educational opportunities lost while unconstitutional restrictions remain in force.

Indeed, Count I seeks prospective relief precisely because the constitutional injury is continuing.

The Court expressly confirmed in its September 14 Order that dismissal of Plaintiffs' individual-capacity claims "leaves the request for prospective relief in Count I undisturbed." ECF No. 91 at 19 n.7.

Plaintiffs therefore continue to suffer irreparable injury warranting preliminary relief.

## V. THE BALANCE OF HARMS FAVORS PLAINTIFFS.

The balance of harms strongly favors an injunction.

Without preliminary relief, Plaintiffs remain subject to the academic and constitutional consequences of the challenged sanctions while this litigation proceeds.

They remain burdened by disciplinary action arising from private speech and continue to lose educational opportunities and First Amendment freedoms that cannot later be restored.

Defendant, by contrast, has no legitimate governmental interest in enforcing an unconstitutional restriction on speech.

An injunction would not prevent FIU from protecting students from actual violence, genuine threats, unlawful conduct, or legitimate threats to campus safety. Nor would it prevent FIU from enforcing constitutionally permissible provisions of its Student Code.

It would simply prevent Defendant from continuing to enforce the particular disciplinary sanctions challenged in Count I while the Court adjudicates whether those sanctions violate Plaintiffs' First Amendment rights.

That limited relief preserves Plaintiffs' constitutional freedoms without impairing FIU's legitimate authority to maintain campus safety.

The balance therefore weighs decisively in Plaintiffs' favor.

## VI. THE PUBLIC INTEREST FAVORS PROTECTION OF FIRST AMENDMENT RIGHTS.

The public has a legitimate interest in safe and orderly universities. But the public also has a profound interest in ensuring that public universities remain subject to the Constitution.

The First Amendment does not disappear at the gates of a public university. *See Healy v. James*, 408 U.S. 169, 180 (1972).

Nor may a public university punish expression merely because officials or members of the community find that expression offensive or objectionable. *Papish v. Board of Curators of University of Missouri*, 410 U.S. 667, 670 (1973).

That principle is particularly important here because the Court has already concluded that Plaintiffs plausibly allege content- and viewpoint-based punishment of facially protected expression.

The Eleventh Circuit has recognized that a governmental entity has no legitimate interest in enforcing unconstitutional restrictions and that protecting First Amendment rights serves the public interest. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).

The requested injunction does not require the Court to choose between campus safety and constitutional liberty. FIU remains fully capable of responding to actual threats and unlawful conduct.

What FIU may not do is punish protected expression merely because of its content or viewpoint.

The public interest therefore strongly favors preliminary relief.

## CONCLUSION

The posture of this case has materially changed since Plaintiffs previously sought preliminary injunctive relief.

The Court has now rejected Defendant's attempt to foreclose Plaintiffs' constitutional claims through FIU's internal administrative findings. More importantly, the Court has expressly held that all four Plaintiffs state valid First Amendment claims against Defendant in her official capacity.

The Court recognized that Ratchkauskas's alleged humorous and hyperbolic statements bear the hallmarks of constitutionally protected expression. It concluded that Defendant's own public statement supports a reasonable inference that Gonzalez was punished for viewpoints attributed to his speech. It rejected Defendant's common grounds for dismissal as to Mojena. And it concluded that Carvajal plausibly alleged punishment based upon the content of facially protected speech.

Those conclusions do not themselves resolve the ultimate merits of Count I, but they provide substantial support for Plaintiffs' likelihood of success under Rule 65.

Meanwhile, Defendant continues to enforce the very sanctions challenged as unconstitutional.

The First Amendment injury therefore continues every day this case remains pending.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a preliminary injunction: (1) directing Defendant Jeanette M. Nuñez, in her official capacity as President of Florida International University, and those acting in

concert or participation with her who receive actual notice of the injunction, to immediately cease enforcement of the suspensions and expulsions imposed against Plaintiffs arising from the speech challenged in Count I; (2) directing FIU to remove those suspensions and expulsions from Plaintiffs' student records pending final adjudication of this action; (3) directing FIU to immediately permit Plaintiffs to return to classes, resume their studies, and participate in University programs and activities on the same terms as other students in good standing; (4) preliminarily declaring that FIU's enforcement of the challenged disciplinary sanctions against Plaintiffs based upon the protected speech alleged in Count I violates the First Amendment to the United States Constitution; (5) enjoining Defendant and those acting in concert or participation with her from reinstating, reimposing, or otherwise enforcing the challenged suspensions, expulsions, or other disciplinary sanctions against Plaintiffs based upon the speech at issue in Count I during the pendency of this action; and (6) granting such other and further relief as the Court deems just and proper.

Dated: September 15, 2026.

Respectfully submitted,

/s/ Anthony F. Sabatini
ANTHONY F. SABATINI
Florida Bar No. 1018163
anthony@sabatinilegal.com
SABATINI LAW FIRM, P.A.
1601 E. 1st Avenue
Mount Dora, Florida 32757
Telephone: (352) 455-2928
Lead Counsel for Plaintiffs

/s/ Gavin B. Rollins
GAVIN B. ROLLINS
Florida Bar No. 1064417
gavin@sabatinilegal.com

SABATINI LAW FIRM, P.A.
1601 E. 1st Avenue
Mount Dora, Florida 32757
Telephone: (352) 328-4892
Co-Counsel for Plaintiffs

CERTIFICATE OF CONFERRAL

Pursuant to Southern District of Florida Local Rule 7.1(a)(3), a pre-filing conference is not required for a motion seeking injunctive relief. Because the foregoing Motion seeks preliminary injunctive relief, undersigned counsel certifies that the pre-filing conference requirement of Local Rule 7.1(a)(3) does not apply.

CERTIFICATE OF SERVICE

Pursuant to Southern District of Florida Local Rule 5.2(a), I HEREBY CERTIFY that on September 15, 2026, a true and correct copy of the foregoing was furnished by email to all parties on record.

*/s/ Anthony F. Sabatini*